# United States Court of Appeals
## For the First Circuit

No. 09-1869

MAYNOR ALONSO LARIOS,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Boudin, and Thompson,
<u>Circuit Judges</u>.

<u>Martin D. Harris</u> on brief for petitioner.
<u>Tony West</u>, Assistant Attorney General, Civil Division, <u>James A. Hunolt</u>, Senior Litigation Counsel, and <u>Nehal H. Kamani</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, on brief for respondent.

June 21, 2010

**THOMPSON**, <u>Circuit Judge</u>. Petitioner Maynor Alonso Larios (Larios) is a native and citizen of Guatemala. He seeks review of the Board of Immigration Appeals'(BIA) final order, affirming without opinion the Immigration Judge's (IJ) decision denying his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Limiting his appeal to the asylum issue, Larios argues that the BIA violated his due process rights by summarily affirming a decision in which the IJ allegedly failed to consider all of his claims for relief. For the reasons that follow, we deny the petition for review.

## BACKGROUND

Larios first arrived in the United States on or about July 29, 2005. He was fourteen years old. On September 2, 2005, the Department of Homeland Security (DHS) filed a Notice to Appear (NTA) with the immigration court, commencing removal proceedings against Larios. DHS maintained that Larios was subject to removal under § 212(a)(6)(A)(I) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(6)(A)(I), as an alien present in the United States without admission or parole.[1] In his "Respondent's Pleadings,"

---

[1] § 212(a)(6)(A)(i)of the INA, 8 U.S.C. § 1182 (a)(6)(A)(i), states the following:

(a) Classes of aliens ineligible for visas or admission

Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States:

dated August 9, 2006, Larios, through counsel, admitted the truth of the allegations in the NTA and conceded removability. On June 27, 2006, Larios submitted his application for asylum, withholding of removal, and protection under CAT. After an evidentiary hearing held on October 1, 2008, the IJ issued an oral decision denying Larios's application for asylum, withholding of removal, and CAT claims. Finding Larios ineligible for relief because he failed to establish that he faced future persecution on account of a protected ground, the IJ ordered Larios removed to Guatemala.[2] On appeal to the BIA, the BIA affirmed the IJ's decision without issuing a separate opinion. This petition for review followed.

## STANDARD OF REVIEW

In immigration cases, we review findings of fact, including credibility determinations, under the highly deferential "substantial evidence" standard. Olujoke v. Gonzales, 411 F.3d 16, 21 (1st Cir. 2005). Accordingly, we must affirm the findings upon which the decision is based if they are "supported by reasonable,

---

   (6) Illegal entrants and immigration violators

    (A) Aliens present without admission or parole

     (i) In general

  An alien in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.

  [2]The IJ also found that Larios was ineligible for voluntary departure because Larios, through counsel, had waived this remedy at the beginning of the hearing.

substantial, and probative evidence on the record considered as a whole." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). This means that the findings must stand unless the record evidence is such as to compel a reasonable fact-finder to make a contrary determination. Olujoke, 411 F.3d at 21; see also 8 U.S.C. § 1252(b)(4)(B). We review the agency's legal interpretations de novo, subject to appropriate principles of administrative deference. See Naeem v. Gonzales, 469 F.3d 33, 36 (1st Cir. 2006). We also review de novo whether immigration procedures comport with due process. Walker v. Holder, 589 F.3d 12, 18 (1st Cir. 2009).

Where the BIA summarily affirms the IJ's asylum determination, as is the case here, we review the IJ's decision as if it were the decision of the BIA. Olujoke, 411 F.3d at 21; see also Albathani v. I.N.S., 318 F.3d 365, 373 (1st Cir. 2003)(quoting Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002)("Ordinarily, Courts of Appeals review decisions of the [BIA], and not those of an IJ. When the BIA does not render its own opinion, however, and either defers [to] or adopts the opinion of the IJ, a Court of Appeals must then review the decision of the IJ.")).

### DISCUSSION

### Larios's Arguments

While Larios's brief is far from a paragon of clarity, he seems to be arguing two separate points. First, he contends--though vaguely at best--that the affirmance without opinion (AWO) procedure

- 4 -

in and of itself is constitutionally infirm. Consequently, the Government addressed the issue in its reply brief. Second, Larios argues that the BIA's use of the AWO procedure in this instance violated his due process rights because the IJ allegedly failed to consider all the grounds for relief raised by him. More specifically, Larios claims that even though the IJ made findings as to the particular social group of youth resistant to gangs, the IJ failed to specifically address Larios's claim that if deported, Larios would be a street child. We will discuss these two arguments sequentially. We begin by addressing briefly the constitutionality of the AWO procedure.

**AWO Procedure**

As a general matter, we have held time and time again that the AWO procedure constitutes "a valid exercise of the Attorney General's discretion to fashion its own rules of procedure." Mekhoukh v. Ashcroft, 358 F.3d 118, 130 (1st Cir. 2004); see also Albathani, 318 F.3d at 377. As we stated in Albathani, "promulgation of the AWO regulations is within the power of the [DHS]." 318 F.3d at 377. That being so, the BIA can adopt, without further explanation, the IJ's opinion. Id. Where the BIA affirms without opinion the decision of the IJ, the IJ's decision becomes the final agency decision for purposes of this Court's review. See 8 C.F.R. § 1003.1(e)(4)(ii). Accordingly, any suggestion by Larios

that the AWO procedure in and of itself violates his due process rights is without merit.

**Asylum Claim**

Larios's claim for asylum turns on his contention that he has a well-founded fear of persecution based on his membership within two particular social groups: the first group comprised of young Guatemalan men recruited by gang members who resist such recruitment and the second group comprised of street children.[3] Larios alleges the IJ failed to adequately consider both grounds for asylum relief, thus depriving him of due process.

As an initial matter, the burden of proof for establishing eligibility for asylum falls on the petitioner.  See 8 C.F.R. § 208.13(a). The applicant must show that he or she is a refugee within the meaning of the immigration laws.  Olujoke, 411 F.3d at 21; see also 8 U.S.C. § 1158(b)(1); 8 C.F.R. § 208.13(a). "A refugee is a person who cannot or will not return to [his or] her home country 'because of [past] persecution or a well-founded fear of [future] persecution on account of  race, religion, nationality, membership in a particular social group, or political opinion.'" Olujoke, 411 F.3d at 21; see also 8 U.S.C. § 1101(a)(42)(A).

---

[3]In proceedings before the IJ, Larios never alleged that he had been a victim of past persecution, so we analyze his asylum claim by considering whether he proved a well-founded fear of future persecution based on a statutorily protected ground. See 8 C.F.R. § 208.13(b).

To prove persecution on account of membership in a particular social group, Larios must show at a bare minimum that he is a member of a legally cognizable social group. See Mendez-Barrera v. Holder, 602 F.3d 21, 25 (1st Cir. 2010). The term "social group" is not defined by statute. However, the BIA has "described a social group as a group of persons sharing a common, immutable characteristic that makes the group socially visible and sufficiently particular." Id. Neither of Larios's proposed social groups meets this standard.

## Youth Resistant to Gang Recruitment

As to Larios's first claim, the IJ concluded that Larios, though credible, nonetheless failed to establish a well-founded fear of persecution on account of membership in a particular social group. Specifically, the IJ found that Larios feared future persecution at the hands of gang members seeking him out for recruitment purposes or retaliating against him for refusing to join their gang. Nevertheless, the IJ determined that if Larios was indeed targeted by gangs, the motivation would not be on account of his membership in a particular social group but would rather be an attempt to increase the gang's numbers. The IJ also found that the gang members may target Larios under the mistaken belief that because he is returning from the United States, he comes from a family with money.

In support of his findings, we first note that the IJ properly applied controlling BIA case law. See Matter of S-E-G-, 24 I. & N. Dec. 579 (BIA 2008)(holding that Salvadoran youths who have been subjected to recruitment efforts by the MS-13 gang and who have resisted membership in the gang do not constitute a particular social group); Matter of E-A-G-, 24 I. & N. Dec. 591 (BIA 2008)(holding that a young Honduran male failed to establish membership in particular social group of persons resistant to gang membership, as evidence failed to establish that Honduran society, including gang members themselves, would perceive those opposed to gang membership as members of a social group); see also Matter of A-M-E- & J-G-U-, 24 I. & N. Dec. 69 (BIA 2007). Morever, Larios's claim is foreclosed by our recent decision in Mendez-Barrera. There, we held that "young [El Salvadoran] women recruited by gang members who resist such recruitment" do not constitute a legally cognizable social group because the proposed group lacks social visibility and is not sufficiently particular. Mendez-Barrera, 602 F.3d at 27. In order to satisfy the social visibility criterion, a group "must be generally recognized in the community as a cohesive group." Id. at 26. Like the petitioner in Mendez-Barrera, Larios has "failed to provide even a scintilla of evidence to this effect." Id. Furthermore, Larios has "failed to pinpoint any group characteristics that render members of the putative group socially visible in [Guatemala]." Id. Larios's "proposed group does not

supply an adequate profile for establishing membership," and therefore, "the putative group-[youth resistant to gang recruitment]-is not socially visible." Id. at 26-27.

Additionally, Larios's proposed social group is "not sufficiently particular to be legally cognizable." Id. at 27. As we stated in Mendez-Barrera,

> it is virtually impossible to identify who is or is not a member. There are, for example, questions about who may be considered "young," the type of conduct that may be considered "recruit[ment]," and the degree to which a person must display "resist[ance]." These are ambiguous group characteristics, largely subjective, that fail to establish a sufficient level of particularity.

Id. (quoting Faye, 580 F.3d at 42). Larios's purported social group of youth resistant to gang recruitment suffers from these same infirmities. Accordingly, because this putative social group is neither socially visible nor sufficiently particular, we conclude that the IJ did not err in denying Larios's claim for asylum based on Larios's membership in this particular group.

**Street Children**

Larios next argues that the IJ should have considered evidence that if Larios returned to Guatemala he would have a well-founded fear of persecution based upon his membership within a legally cognizable social group, to wit, "street children." The IJ's alleged failure to address this argument, he contends, deprives him of due process rights. However, not once when testifying did

Larios ever specifically claim that he would end up as a street child. Indeed, when asked if he would end up living on the streets, homeless in Guatemala, Larios conceded that he would not. Similarly, there was no argument made before the IJ as to why Larios would even meet the criteria of a "street child." Consequently, because Larios failed to properly raise this claim before the IJ, this argument is deemed waived on appeal. See Kechichian v. Mukasey, 535 F.3d 15, 22 (1st Cir. 2008) (finding no error in the BIA's refusal to address claim that had not been properly raised before the IJ).

In reaching our conclusion we are mindful of the strict standards of review by which we are bound. We do not have the authority to grant the petition unless the evidence compels a conclusion different from that reached by the IJ. Mejilla-Romero v. Holder, 600 F.3d 63, 76 (1st Cir. 2010). On the record before us, we cannot say that it does. Substantial evidence exists to uphold the IJ's determination that Larios's testimony, though credible, was not enough to show that he had a well-founded fear of persecution on account of his membership in a statutorily protected social group.

## CONCLUSION

In sum, the IJ's decision to deny Larios's asylum claim was well-reasoned and supported by controlling precedent:

substantial evidence exists to uphold the decision of the IJ.  The petition is denied.