# United States Court of Appeals
## For the First Circuit

No. 09-2085

USMAN AHMED AND AFSHEEN IQBAL BUTT,

Petitioners,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.


PETITION FOR REVIEW OF AN ORDER OF THE BOARD

OF IMMIGRATION APPEALS


Before

Torruella, Selya and Howard, Circuit Judges.


Daniel F. Cashman and Cashman & Lovely, P.C. on brief for petitioners.
Tony West, Assistant Attorney General, Civil Division, United States Department of Justice, Shelley R. Goad, Assistant Director, Office of Immigration Litigation, and Jennifer A. Singer, Trial Attorney, Office of Immigration Litigation, on brief for respondent.


July 13, 2010

**SELYA**, **Circuit Judge**.  The petitioners, Usman Ahmed and Afsheen Iqbal Butt, are Pakistani nationals.  They seek judicial review of an order of the Board of Immigration Appeals (BIA) denying their applications for withholding of removal and protection under the United Nations Convention Against Torture (CAT).  Discerning no error, we deny the petition.

The facts are straightforward.  In January of 1997, Ahmed entered the United States on an F-1 student visa and began attending school in New Hampshire.  He returned to Pakistan for roughly two weeks in early 1999 and married Butt.  The newlyweds promptly returned to the United States.  Due to the combined effect of their marriage and Ahmed's student status, Butt received a derivative F-2 visa.

In time, Ahmed stopped going to school and went to work in the private sector.  This shift resulted in a loss of his student status, and effectively terminated the couple's right to stay in the United States.  See 8 U.S.C. § 1227(a)(1)(B), (a)(1)(C)(i).  The petitioners nevertheless remained in the United States without legal authorization.  Over time, their nuclear family expanded to include four American-born children.

The Department of Homeland Security instituted removal proceedings against Ahmed in December of 2005 and against Butt in January of 2006.  The petitioners cross-applied for divers forms of relief.  At a hearing held before an immigration judge (IJ) on

October 16, 2007, their cases were consolidated. The petitioners conceded removability but, pertinently, pressed their claims for withholding of removal and CAT protection.

The petitioners made no developed claim of past persecution. Rather, the basic theme of their argument was that, if removed to Pakistan, they would be targeted by Islamic fundamentalists because of their pro-American views. Butt mounted an independent line of argument, asserting that she would face the prospect of persecution on account of her gender.

Both petitioners testified at the hearing. In addition, they introduced documentary evidence, including Amnesty International publications, State Department reports on human rights in Pakistan, background materials concerning the treatment of women in Pakistan, and the like.

The IJ found the testimony of both petitioners credible. He nonetheless determined that they had not established a clear probability of persecution on account of a statutorily protected ground should they be returned to Pakistan. The IJ made a similar determination with respect to the lack of any likelihood of torture. Accordingly, he denied the applications for withholding of removal and protection under the CAT.

On appeal to the BIA, the petitioners argued, among other things, that the IJ had failed appropriately to weigh their claims for withholding of removal based on persecution traceable to their

membership in a cognizable social group and/or their political opinions. The BIA rejected these arguments, concluding that the petitioners had not established that they would be in harm's way on account of either their membership in the purported social group ("secularized and westernized Pakistanis perceived to be affiliated with the United States") or their political opinions (pro-American views). The BIA also concluded that Butt had not shown a clear probability that she would be persecuted on account of her gender. Finally, the BIA rebuffed the petitioners' claims for protection under the CAT. This timely petition for judicial review followed.

When the BIA has embarked upon an independent evaluation of the record and rested its decision on a self-generated rationale, judicial review focuses on the BIA's decision, rather than the IJ's decision. Pulisir v. Mukasey, 524 F.3d 302, 307-08 (1st Cir. 2008). This is such a case.

In appraising a decision of the BIA, we defer to the agency's factual determinations as long as those determinations are supported by substantial evidence. Id. at 307. This standard requires that a determination be "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). In a nutshell, the BIA's fact-based determinations must be honored unless the record compels a reasonable factfinder to make a

-4-

contrary determination.  Bocova v. Gonzales, 412 F.3d 257, 262 (1st Cir. 2005); Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004).

Questions of law are treated differently.  Such questions engender de novo review, albeit with a measure of respect afforded to the BIA's reasonable interpretations of statutes and regulations falling within its purview.  See Pulisir, 524 F.3d at 307; see also Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-44 (1984).

In this venue, the petitioners' preserved challenges relate to withholding of removal.  In order to succeed in a quest for that relief, an alien must show that, more likely than not, he will be persecuted on account of a statutorily protected ground if returned to his homeland.  Pulisir, 524 F.3d at 308.  Such statutorily protected grounds include race, religion, national origin, membership in a particular social group, and political opinion.  8 U.S.C. § 1231(b)(3)(A).  This paradigm requires an alien to demonstrate a clear probability of future persecution. See Ang v. Gonzales, 430 F.3d 50, 58 (1st Cir. 2005) (noting that a claim for withholding of removal imposes a more stringent burden of proof on an alien than does a counterpart claim for asylum). This may be accomplished either directly or indirectly (by showing past persecution sufficient to create a rebuttable presumption that the alien is likely to suffer future persecution).  Pulisir, 524 F.3d at 308.

In this instance, the petitioners have tried to link their putative entitlement to withholding of removal both to membership in a particular social group and to political opinion. Those are related, but conceptually distinct, links. We therefore address them separately.

As to their membership in a particular social group, the petitioners refer to a social group comprising "secularized and westernized Pakistanis perceived to be affiliated with the United States." But a social group does not exist as such merely because words are sufficiently malleable to allow a litigant to sketch its margins. Rather, for a proposed social group to achieve cognizability (that is, to come within the compass of the statute), its members must share at least one common, immutable characteristic. Da Silva v. Ashcroft, 394 F.3d 1, 5 (1st Cir. 2005). In addition, the shared characteristic or characteristics must make the group generally recognizable in the community and must be sufficiently particular to permit an accurate separation of members from non-members. Faye v. Holder, 580 F.3d 37, 41 (1st Cir. 2009); Scatambuli v. Holder, 558 F.3d 53, 59 (1st Cir. 2009).

Here, the BIA determined that the petitioners had failed to establish the existence of a cognizable social group. As we explain below, this determination is supported by substantial evidence.

We start with the most obvious flaw in the fabric of the petitioners' argument: they have failed to show that their definition of a proposed social group satisfies the particularity requirement. Adjectives like "secularized" and "westernized" reflect matters of degree and, in the last analysis, such adjectives call for subjective value judgments. Whether a person is "secularized" or "westernized" is neither readily apparent nor susceptible to determination through objective means. Given the vagueness of the proffered definition, an objective observer cannot reliably gauge who is or is not a member of the group.

We have noted, with a regularity bordering on the echolalic, that a loose description of a purported social group does not establish a sufficient level of particularity to render that group cognizable for purposes of the immigration laws. See, e.g., Mendez-Barrera v. Holder, 602 F.3d 21, 27 (1st Cir. 2010); Faye, 580 F.3d at 42. The gauzy generalities in which the petitioners couch the contours of the proffered group do not permit us to conclude that the BIA erred in refusing to recognize that group.

If more were needed — and we doubt that it is — the petitioners have failed to provide any evidence indicating that this supposed social group is recognized as such in contemporary Pakistan. See Mendez-Barrera, 602 F.3d at 26-27. This omission is fatal.

For these reasons, the BIA's determination that the petitioners failed to establish membership in a cognizable social group must stand.

The petitioners' claims anent persecution based on political opinion bear a family resemblance to their social group claims. They posit that Islamic fundamentalists will target them in Pakistan because of their pro-American views. This hypothesis, though forcefully pronounced, amounts to nothing more than speculation — and speculation is not a substitute for proof.

The petitioners point to documentary evidence in support of their position. This evidence suggests that the Pakistani people have diverse political, social, and cultural views (including mixed sentiments about the United States). The same evidence also suggests that violence and human rights violations are concomitants of everyday life in some parts of Pakistan. But none of this evidence comes close to establishing a clear probability that, should the petitioners be returned to their homeland, Islamic fundamentalists will learn of their pro-American sentiments and single them out for mistreatment on that account.

Let us be perfectly clear. Political instability, cultural divisions, and sporadic violence may make life in any nation uncomfortable, stressful, or even dangerous. Still, the presence of such conditions, detached from the particulars of an alien's individualized situation, is not enough to compel relief

from removal.  See, e.g., Chreng v. Gonzales, 471 F.3d 14, 23 n.3 (1st Cir. 2006).  As we recently wrote: "Without some specific, direct, and credible evidence relative to [the alien's] own situation, there is an insufficient nexus between the [alien] and the general unrest depicted in . . . country conditions reports." Seng v. Holder, 584 F.3d 13, 19-20 (1st Cir. 2009).  So it is here.

The absence of specific and direct evidence bearing on the petitioners' circumstances ends this aspect of our inquiry. The petitioners have the burden of showing that a clear probability of persecution looms.  Ang, 430 F.3d at 58.  Where, as here, they have provided nothing more than background information that does not illuminate their individualized circumstances, there is no foundation on which we may base a reversal of the BIA's determination that relief is unwarranted.  See Chhay v. Mukasey, 540 F.3d 1, 8 (1st Cir. 2008); Makhoul v. Ashcroft, 387 F.3d 75, 82 (1st Cir. 2004).

To be precise, the BIA concluded that the petitioners had failed to establish a clear probability of persecution on account of political opinion.  That determination is fully supportable. The record does not compel a contrary conclusion — and the mere presence of some evidence pointing the other way is insufficient, in itself, to derail the BIA's conclusion.  See Sugiarto v. Holder, 586 F.3d 90, 94 (1st Cir. 2009); see also Laurent, 359 F.3d at 64 (admonishing that a reviewing court must uphold the BIA's

determination unless the record "points unerringly in the opposite direction").

We turn next to Butt's separate assertion that the BIA incorrectly rejected her claim that, more likely than not, she would be persecuted in Pakistan on account of her gender. This is a species of a "social group" claim. After all, gender — a common, immutable characteristic — can be a component of a viable "social group" definition. See, e.g., Yadegar-Sargis v. INS, 297 F.3d 596, 603 (7th Cir. 2002); Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993); see also Kechichian v. Mukasey, 535 F.3d 15, 20 (1st Cir. 2008).

Against this backdrop, Butt makes a three-pronged attack on this aspect of the BIA's decision. She voices her fear that, if repatriated, she will be (i) abused by her husband, (ii) subjected to an honor killing, or (iii) burdened by cultural expectations. We discuss these fears one by one.

First, Butt expresses concern that her husband, Ahmed, will become abusive in Pakistan due to societal influences. That surmise, however, cannot be taken at face value. Butt testified that Ahmed is a good man who always has taken care of her. She presented no evidence that he has ever abused her. The BIA was not compelled to ignore these facts and instead credit Butt's self-serving conjecture that a return to Pakistan will transmogrify Ahmed from a model husband into a wife-beating brute.

-10-

Butt's trepidation about honor killings can be quickly dispatched. While the documentary evidence touches upon the incidence of honor killings in Pakistan, those references are generic in nature. The evidence indicates that honor killings, when they are committed, usually take place in retaliation for specific insults, such as when a woman has divorced her husband, spurned a potential marriage arranged by her family, or engaged in an extra-marital relationship.

Here, however, Butt makes no attempt to place herself within any of the categories that have been known to spark honor killings. Without some specific evidence placing Butt within the sphere of danger associated with honor killings, there is too tenuous a nexus between this barbaric practice and Butt's situation to support a claim of likely persecution. See, e.g., Seng, 584 F.3d at 19-20; Makhoul, 387 F.3d at 82.

The third prong of Butt's attack suggests that, if returned to Pakistan, her life and liberty will be jeopardized because she will be constrained to conform to cultural expectations about women that are antithetic to her preferences. In support, she points out that, while living in the United States, she has not worn a veil, prayed five times daily, or stayed indoors unless accompanied by a man. The Pakistani culture, she says, would expect her to do the opposite.

We usually think of "persecution" as involving physical harm or the like.  See, e.g., Orelien v. Gonzales, 467 F.3d 67, 71 (1st Cir. 2006); Bocova, 412 F.3d at 263.  Gender-specific strictures that do not involve such levels of harm may constitute persecution, but the threshold is high; such strictures constitute persecution only if, and to the extent that, they force a person to behave in ways that are, at a minimum, "abhorrent to that individual's deepest beliefs."  Fatin, 12 F.3d at 1242.

On this record, we cannot say that the BIA was compelled to find that having to conform to Pakistan's cultural expectations amounts to persecution.  Other courts that have addressed the issue require evidence of an individual's profound opposition and refusal to conform in order to demonstrate that the cultural expectations are abhorrent to the individual's beliefs.  See, e.g., Safaie v. INS, 25 F.3d 636, 640 (8th Cir. 1994); Fatin, 12 F.3d at 1241-42.

When Butt testified at the hearing before the IJ, she did not suggest that she would refuse to conform to cultural expectations.  Rather, she stated that societal pressures will force her to conform.[1]  Moreover, Butt did not present any evidence

---

[1] In an affidavit that antedated her testimony, Butt stated that she "will not and [] cannot reform to the cultural pressures of my country regarding women."  At the hearing, however, she abandoned this stance and testified that Pakistan is a "man-dominating society" and "whatever they will tell me to do . . . , I have to do that."  For purposes of review under the substantial evidence standard, we think it fair to assume that the BIA credited Butt's live testimony before the IJ.

-12-

that she demonstrated opposition to those cultural expectations while living in Pakistan for some twenty-five years before emigrating to the United States. These factors weigh in the balance against her claim of persecution. See <u>Yadegar-Sargis</u>, 297 F.3d at 604-05. The upshot is that Butt has not established a clear probability that conforming to the cultural expectations that she describes is so profoundly abhorrent to her beliefs as to amount to persecution.

We add a caveat. In some cases, an alien may be able to show that her anticipated acquiescence to a country's cultural expectations is due to the severe consequences of noncompliance (say, imprisonment or corporal punishment). Here, however, Butt has not presented any evidence demonstrating that the consequences of non-conformity in her case would amount to persecution.

Butt makes a last-ditch attempt to salvage an entitlement to withholding of removal. She asserts that, before her marriage, she was abused by her father. Building on that foundation, she argues that this parental mistreatment constitutes past persecution sufficient to trigger a presumption of future persecution. This argument is presented for the first time in this court; it was not made before the BIA, and, thus, is dead on arrival.

It is settled beyond hope of contradiction that judicial review of a final order of the BIA may proceed only if, and to the extent that, "the alien has exhausted all administrative remedies

available to the alien as of right."  Makhoul, 387 F.3d at 80 (citing 8 U.S.C. § 1252(d)(1)).  Faithful to this rule, we consistently have held that arguments not made before the BIA may not make their debut in a petition for judicial review of the BIA's final order.  See, e.g., Ishak v. Gonzales, 422 F.3d 22, 31 (1st Cir. 2005); Olujoke v. Gonzales, 411 F.3d 16, 22-23 (1st Cir. 2005); Makhoul, 387 F.3d at 80.  Consequently, we lack jurisdiction to consider this unexhausted claim.

This leaves the petitioners' CAT claim.  "Gaining relief under the CAT entails a showing that an alien will, upon repatriation, more likely than not face torture with the consent or acquiescence of the government then in power."  Mendez-Barrera, 602 F.3d at 27-28 (citing 8 C.F.R. §§ 1208.16(c), 1208.18(a)(1)).

There is no reason to dawdle.  Although the petitioners have given lip service to the CAT claim, they have not formulated any developed argumentation in support of that claim.  Their brief includes only three fleeting references to this claim, none of which is even arguably substantive.  Thus, this is an appropriate case in which to apply the venerable precept that appellate arguments advanced in a perfunctory manner, unaccompanied by citations to relevant authority, are deemed waived.  See Jiang v. Gonzales, 474 F.3d 25, 32 (1st Cir. 2007); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

We need go no further.  For the reasons elucidated above, we deny the petition for judicial review.


**So Ordered**.