Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 10-1876

EDUARDO DE JESÚS DÍAZ RUANO,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF

THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Selya and Howard,
Circuit Judges.

Robert M. Warren on brief for petitioner.
Tony West, Assistant Attorney General, Civil Division, John S. Hogan, Senior Litigation Counsel, and Robbin K. Blaya, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

April 28, 2011

**Per Curiam**.  Eduardo de Jesús Díaz Ruano, a Guatemalan national, seeks judicial review of an order of the Board of Immigration Appeals (BIA) denying his application for withholding of removal and protection under Article III of the United Nations Convention Against Torture (CAT).  After careful consideration, we deny the petition.

We draw the facts largely from the petitioner's testimony before the immigration judge (IJ).

During his formative years, the petitioner lived in the village of San Pedro Ayampuc, where he worked on his father's farm.  Over time, criminal gangs became an insidious influence in the region.  In 2003, one such gang turned its attention to the petitioner's village.

The gang tried unsuccessfully to recruit one of the petitioner's friends.  The gang then threatened to beat the friend if he did not join.  The recalcitrant recruit responded by fleeing the country.

The petitioner feared that the gang, members of which frequently had seen him and his friend together, would focus on him next.  This fear became a reality; the gang confronted the petitioner to determine the friend's whereabouts.  The petitioner would not divulge this information, and the gang threatened him with violence.  The petitioner reported this incident to the

police.  They paid him a visit but told him that there was not enough evidence to pursue the matter.

When the gang beat a friend so severely that he required hospitalization,[1] the petitioner, who was then eighteen years of age, decided to flee to the United States.  He believed that the gangs were ubiquitous throughout Guatemala and feared that he would not find a safe haven elsewhere in his homeland.

The petitioner entered the United States in 2003, without inspection.  Federal authorities commenced removal proceedings against him in 2006.  He conceded removability and cross-applied for withholding of removal and protection under the CAT.  He did not seek asylum, presumably because the one-year deadline had passed by then.  See 8 U.S.C. § 1158(a)(1), (2)(B).

After an evidentiary hearing, the IJ denied the cross-application, holding that the petitioner was not eligible for either withholding of removal or protection under the CAT.

The petitioner's administrative appeal came to naught. The BIA, on de novo review, confirmed that he had not demonstrated eligibility for either form of relief.  This timely petition for judicial review followed.

---

[1] The record is unclear as to the details of this incident and whom it involved.

The petitioner challenges both facets of the BIA's ukase. We address his claims sequentially. We start, however, with the standard of review.

We review the agency's factual findings through the prism of the substantial evidence rule. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Viewed through that prism, we will accept those findings unless the record as a whole would compel a reasonable factfinder to reach a contrary conclusion. Id. Questions of law engender de novo review, with some deference to the BIA's interpretation of statutes and regulations that fall within its purview. Elien v. Ashcroft, 364 F.3d 392, 396-97 (1st Cir. 2004).

The first of the petitioner's assignments of error implicates the denial of withholding of removal. The relevant legal framework is familiar.

An alien who seeks withholding of removal may not be deported if, upon repatriation, his life or freedom would be threatened on account of any one of five statutorily protected grounds: race, religion, nationality, political opinion, or membership in a social group. See 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b); Pulisir v. Mukasey, 524 F.3d 302, 308 (1st Cir. 2008). The alien bears the burden of showing that there is a "clear probability" that such persecution will transpire.[2] INS v.

---

[2] In the withholding of removal context, a "threat to life or freedom" is functionally equivalent to "persecution" in the asylum context, Wiratama v. Mukasey, 538 F.3d 1, 3 (1st Cir. 2008), and we

Stevic, 467 U.S. 407, 430 (1984). This entails a showing of a prospect of serious harm or jeopardy, not mere discomfiture, unpleasantness, ordinary harassment, or unfair treatment. López Pérez v. Holder, 587 F.3d 456, 461 (1st Cir. 2009); López de Hincapie v. Gonzales, 494 F.3d 213, 217 (1st Cir. 2007). It also entails a showing of some connection between the government and the anticipated harm, whether by participation, acquiescence, or condonation. See, e.g., López Pérez, 587 F.3d at 462; Raza v. Gonzales, 484 F.3d 125, 129 (1st Cir. 2007).

We turn now from the general to the specific. The petitioner asserts that he fears persecution because of his membership in a social group composed of "young male[s] sought out for information and recruitment by the criminal gang of Guatemala." As we explain below, this definition does not describe a social group within the taxonomy of the statute.

To begin, the BIA has determined that members of a cognizable social group must share one or more common, immutable characteristics that make the group sufficiently particular and socially visible. Matter of E-A-G-, 24 I. & N. Dec. 591, 593-94 (BIA 2008); Matter of S-E-G-, 24 I. & N. Dec. 579, 582-83 (BIA 2008); see generally Matter of Acosta, 19 I. & N. Dec. 211, 232-34 (BIA 1985). We have pronounced this requirement an acceptable

use the terms interchangeably. The required degree of probability is, however, higher for withholding of removal. Id.

-5-

gloss on the statutory language.  See Faye v. Holder, 580 F.3d 37, 41 (1st Cir. 2009); Scatambuli v. Holder, 558 F.3d 53, 59 (1st Cir. 2009); Da Silva v. Ashcroft, 394 F.3d 1, 5 (1st Cir. 2005).  The group proposed by the petitioner does not satisfy this criterion.

Phrases that are open-ended and subject to interpretation, such as "recruitment" potential and "information" that might be attractive to a gang, are not sufficiently particular to describe a cognizable social group.  See Ahmed v. Holder, 611 F.3d 90, 94 (1st Cir. 2010).  Such loose and inherently subjective descriptions do not "permit an accurate separation of members from non-members."  Id.  Because their boundaries are neither clearly demarcated nor self-elucidating, they do not delimit a cognizable social group.  See Mendez-Barrera v. Holder, 602 F.3d 21, 27 (1st Cir. 2010); see generally Faye, 580 F.3d at 41-42 (noting that terms such as "wealthy" and "affluent" are too vague to define a social group).

Moreover, the age parameters ("young male[s]") are similarly lacking in precision.  One who is "young" in the eyes of one observer may not be "young" in the eyes of another observer.[3] In addition, the age parameters span a period of several years, and the petitioner makes no effort to account for the gap between his difficulties with the gang (at age eighteen) and his age at

_____

[3] For example, a twenty-five year old may be "young" in the eyes of an octogenarian, but "old" in the eyes of a third-grade student.

possible repatriation (he is now in his mid-twenties). See Matter of S-E-G-, 24 I. & N. Dec. at 583-84.

To cinch matters, the petitioner has not demonstrated that his putative social group has the requisite social visibility. In order to satisfy the requirements for a social group, an alien must show that the relevant community (here, Guatemala) views the described group as a discrete class. See Castañeda-Castillo v. Holder, ___ F.3d ___, ___ (1st Cir. 2011) [No. 09-1847, slip op. at 20]; Santos-Lemus v. Mukasey, 542 F.3d 738, 746 (9th Cir. 2008). A social group must be more than an empty description or string of words; it must be a group of people publicly recognized as such in the relevant community. See Ahmed, 611 F.3d at 94. The petitioner has failed to make this showing with respect to "young male[s] sought out for information and recruitment."

If more were needed — and it plainly is not — the petitioner's claim for withholding of removal is deficient in another respect: he has failed to tie mistreatment at the hands of the gang to the Guatemalan government. He makes no assertion that the government is directly responsible for the activities of the gang. Thus, he must show governmental acquiescence: that the government is either unwilling or unable to control the gang's misconduct. See Jorgji v. Mukasey, 514 F.3d 53, 57 (1st Cir. 2008); Orelien v. Gonzales, 467 F.3d 67, 72 (1st Cir. 2006).

The only evidence bearing on this point is the petitioner's testimony that when he notified the police of his confrontation with the gang, their response was stymied by a professed lack of evidence. Building on this porous foundation, the petitioner urges us to conclude that the police acquiesced in the gang's conduct.

We resist that exhortation. The vignette relied on by the petitioner does not compel the conclusion that the government was either unable or unwilling to control the gang. It is at least as plausible to infer that the police were ready, willing, and able to follow up, but could not do so with the scanty information that the petitioner was able to provide. A reasonable factfinder would not be compelled to conclude that the police condoned the gang's mischief. The BIA's contrary conclusion is, therefore, supported by substantial evidence. See Morgan v. Holder, 634 F.3d 53, 59 (1st Cir. 2011).

This brings us to the petitioner's second assignment of error: the rejection of his CAT claim. To prevail on such a claim, an alien must show that, more likely than not, he will be tortured upon repatriation. 8 C.F.R. § 1208.16(c)(2); Romilus v. Ashcroft, 385 F.3d 1, 8 (1st Cir. 2004). For CAT purposes, "torture" is any act that inflicts severe physical or mental pain, "when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting

in an official capacity."  8 C.F.R. § 1208.18(a); see Chhay v. Mukasey, 540 F.3d 1, 7 (1st Cir. 2008).  Consequently, the alien must show not only that the feared harm would amount to torture but also that it would have a legally sufficient nexus to the government.

We need not probe these points.  In this case, the petitioner has made no meaningful effort to satisfy the applicable standard.  While his brief makes a conclusory reference to the insupportability of the BIA's ruling denying him CAT protection, it is devoid of any developed argumentation regarding this claim. Given this failing, we deem the claim abandoned.[4]  See Pan v. Gonzales, 489 F.3d 80, 87 (1st Cir. 2007); Jiang v. Gonzales, 474 F.3d 25, 32 (1st Cir. 2007); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

We need go no further.  For the reasons elucidated above, we deny the petition for judicial review.

**So Ordered**.

---

[4] We note in passing that in view of the petitioner's inability to show either governmental involvement or acquiescence in the gang's conduct, see text supra, it seems clear that, on this record, he could not in any event show the requisite link between the claimed "torture" and the Guatemalan government.