MANION, Circuit Judge,
with whom EASTERBROOK, Chief Judge, joins, dissenting.
I.
After illegally entering the United States using a false Italian passport, Johana Cece sought asylum. To be eligible for asylum, applicants must .show that they are “unable or unwilling to return” to the country of their nationality “because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.” 8 U.S.C. §, 1101(a)(42)(A).
In seeking asylum, Cece claimed she both had suffered past persecution and had a well-founded fear of future persecution. The Board, however, concluded that Cece had not established past persecution, R. 330, and Cece does not challenge that determination on appeal. The Board also concluded that Cece was not entitled to asylum on the basis of a well-founded fear of future persecution because Cece had not “established that she fears persecution based upon one of the protected grounds under the Act.” R. 330. The Board further found that “there is [injsufficient evidence in the record ... that internal relocation is not reasonable.” R. 331.
*684 The en Banc court holds that “Cece has established that she belongs to a cognizable social group,” Opinion at 677, namely “young Albanian women who live alone.” Opinion at 673. And that the immigration judge and Board erred in determining “that her social group was not cognizable under the Act.” Opinion at 677. The en Banc court further holds that the Board’s conclusion that Cece could safely relocate in Albania was not supported by substantial evidence, and grants the petition for review and remands to the agency for further proceedings. Opinion at 677-78.
In holding that “Cece has established that she belongs to a cognizable social group,” Opinion at 677, the en Banc court discusses at length the complexity of defining a “social group.” See Opinion at 668-77. As discussed below, I have several concerns with the court’s analysis. However, even if the en Banc court is correct that “young Albanian women who live alone,” is a “social group” within the meaning of the INA, her petition for review should nonetheless be denied because substantial evidence supports the Board’s finding that Cece did not present sufficient evidence that internal relocation is not reasonable. That finding alone dooms Cece’s asylum petition and accordingly we should deny Cece’s petition for review. I DISSENT.
II.
A. Social Group
As the en Banc' court explains, “Congress did not directly address what it meant to be a protected ‘social group’ in the Immigration and Nationality Act, so we look to see how the agency has interpreted the statute.” Opinion at 668-69. The court then notes that the Board defined “social group” in Matter of Acosta, 19 I. & N. Dec. 211, 233-34 (1985), to be limited “to groups whose membership is defined by a characteristic that is either immutable or is so fundamental to individual identity or conscience that a person ought not be required to change.” Opinion at 669. We have deferred to that definition. Opinion at 669 (citing Lwin v. INS, 144 F.3d 505, 512 (7th Cir.1998)).
My first concern with the en Banc court’s holding is that the court’s formulation of Cece’s social group as “young Albanian women who live alone” does not satisfy the Board’s definition of “immutable” or “fundamental” characteristics. There is nothing immutable about “living alone.” Nor is “living alone,” unlike an individual’s choice to be single[1] or married, “so fundamental to individual identity or conscience that a person ought not be required to change.” And there are many variations in location and type of dwelling where a woman can choose to live alone.
I also have concerns with the en Banc court defining a social group with the subjective adjective of “young.” A shared characteristic of a “social group,” “must provide a clear demarcation, ‘permitting] an accurate separation of members’ from non-members,’ ... Consequently, loose descriptive phrases that are open-ended and that invite subjective interpretation are not sufficiently particular to describe a protected social group.” Mayorga-Vidal v. Holder, 675 F.3d 9, 15 (1st Cir.2012) (quoting Ahmed v. Holder, 611 F.3d 90, 94 (1st Cir.2010)).
The use of “young,” or for that matter, “middle-aged,” or “old,” to define a characteristic of a social group is simply too amorphous; there is no clear demarcation *685 of who fits within this social group. See Larios v. Holder, 608 F.3d 105, 109 (1st Cir.2010) (“There are, for example, questions about, who may be considered ‘young,’ ... [this is an] ambiguous group characteristic[ ], largely subjective, that fail to establish a sufficient level of particularity.” (quoting Mendez-Barrera v. Holder, 602 F.3d 21, 27 (1st Cir.2010))). -In fact, this case aptly illustrates the problem with such a subjective term. Cece’s own expert defined the targeted group as “young women” between the. “ages of about 16, 17 up-until probably about 26 or so but many minor females get caught up in this as well, children.” R. 473. At the time of the hearing, Cece was just two months shy of 27. R. 501. And so the agency’s attorney asked the expert whether traffickers would be interested in Cece if she were 27 at the time she returned to Albania. R. 501. The expert responded that “it’s certainly possible.” R. 502. But “a social group does not exist as such merely because words are sufficiently malleable to allow a litigant to sketch its margins.” Ahmed, 611 F.3d at 94. Now Cece is 34. R. 105. Can “16, 17-up until probably about 26,” stretch further to 34? Is 34 young? It depends on whom you ask. And that is the problem with using such subjective characteristics to define a “social group.”
Further, we should leave to the Board in the first instance to determine whether “living alone” and “young” should qualify as characteristics of a social group. As the en banc court recognizes, “[a]n appellate court errs by deciding in the first instance, without giving the Board the first opportunity on remand, whether a proposed social group is cognizable within the meaning of the Act.” Opinion at 677. The court, however, reasons that the immigration judge and Board erred because they “had before them all of the facts pertaining to Cece’s proposed social group and yet determined that her social group was not cognizable under the Act.” Opinion at 677.
While the immigration judge and Board may have had all the facts, pertaining to Cece’s proposed social group, before it, they did not view Cece’s proposed social group , as “young Albania woman living alone.” Rather, they viewed the social group as “young women who are targeted for prostitution by traffickers in Albania,” or “women in danger of being trafficked as prostitutes.” Opinion at 670 (citing R. 128, 131). Accordingly, the immigration judge and Board never considered the propriety of the social group defined by this court, i.e., “young Albania women living alone.” More specifically, the immigration judge and Board never considered whether “young” and “living alone,” could be characteristics of a social group. And since we lack the authority to decide in the first instance whether these characteristics may form a social group, remand is the appropriate course of action. See Gonzales v. Thomas, 547 U.S. 183, 186, 126 S.Ct. 1613, 164 L.Ed.2d 358 (2006) (per curiam); INS v. Orlando Ventura, 537 U.S. 12, 16-17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam).
There is one further complication. While Cece’s application for asylum and her. expert witness’s testimony focused on the risk to young woman, human trafficking in Albania is not so limited. Virtually everyone in Albania is a potential target for human trafficking, as.explained, by the U.S.. Embassy’s June 2012 Trafficking in Persons Report:
Albania is primarily a source country for men, women, and children subjected to sex trafficking and forced labor, including the forced begging of children. Albanian women and children continue to be subjected to sex trafficking within the *686 country. Albanian victims are subjected to conditions of forced labor and sex trafficking in Greece, Italy, Macedonia, Kosovo, Serbia, and throughout Western Europe. Authorities reported finding trafficking victims from Greece and Ukraine in Albania during the year. Children were exploited for commercial sex, forced begging, and forced criminality, such as burglary and drug distribution; girls were also subjected to prostitution or forced labor after arranged marriage. There is evidence that Albanian men are subjected to forced labor in agriculture in Greece and other neighboring countries. Re-trafficking of Albanian victims continued to be a problem.[2]
Thus, girls, boys, women, and men living in Albania are subjected to human trafficking. And others are targeted, as Cece’s expert testified, “because of the fact that the trafficker has something against their particular family.” R. 256. But the “ ‘generalized lawlessness and violence between diverse populations, of the sort which abounds in numerous countries and inflicts misery upon millions of innocent people daily around the world, generally is not sufficient to permit the Attorney General to grant asylum.’ ” Konan v. Attorney Gen. of U.S., 432 F.3d 497, 506 (3d Cir.2005) (quoting Singh v. INS, 134 F.3d 962, 967 (9th Cir.1998)); see also Ahmed v. Ashcroft, 348 F.3d 611, 619 (7th Cir.2003). Can individuals subjected to such “generalized lawlessness” nonetheless seek asylum by carving out the immutable or fundamental characteristics that make them the target for that violence? In other words, could virtually every Albania obtain “social group” status by identifying the characteristics that make them a target for human trafficking, when as Cece’s own expert testified, “[m]ost of the time, however, [human, trafficking] has simply to do with economics.” R. 256. What about: “Young strong men,” targeted for human trafficking for forced labor; “handicapped boys,” targeted for human trafficking for forced begging; “strong boys,” targeted for human trafficking for burglary; “pretty girls,” targeted for sexual exploitation; and “young woman living alone,” targeted for prostitution?
When the scourge of human trafficking targets such a broad segment of the population, if not the entirety of the population, it may well seem that what the victims have in common is not an immutable or fundamental trait, but the unfortunate circumstance of being targeted for any offensive purpose. That may explain why the Board concluded that this was not a “social group” within the meaning of the INA: because it is “defined in large part by the harm inflicted on the group, and does not exist independently of the traffickers.” R. 9. Accord Rreshpja v. Gonzales, 420 F.3d 551, 555-56 (6th Cir.2005); see also Escobar v. Holder, 657 F.3d 537, 545 (7th Cir.2011) (holding that a social group “cannot be defined solely by the fact that its members suffer persecution from the government or from a group that the government cannot or will not control”). But rather than rejecting Cece’s proposed social group because it is defined in large part by the harm inflicted on the group, as the Board did, the better approach might be to instead recognize that the problem is one of generalized lawlessness.
However, in the final analysis, we need not reach these difficult questions because, as discussed below, even if Cece identified a social group within the meaning of the *687 INA, and presented a case of persecution — as opposed to generalized lawlessness — Cece still cannot prevail on her request for asylum because the Board found that “there is [insufficient evidence in the record ... that internal relocation is not reasonable.” R. 331.
B. Internal Relocation
Because Cece’s application for asylum is based on a well-founded fear of future persecution, in addition to proving that she is unable or unwilling to return to Albania because of her membership in a particular social group, she also bears the added burden of proving she cannot reasonably relocate to another part of her home country to avoid persecution. Oryakhil v. Mukasey, 528 F.3d 993, 998 (7th Cir.2008). “The immigration regulations contemplate two separate inquiries to determine whether an applicant could reasonably relocate within his home country: (1) whether safe relocation is possible, and if so, (2) whether it would be reasonable to expect the applicant to safely relocate.” Id.
In this case, the Board found that Cece failed to meet her burden to show that internal relocation was not reasonable. The en Banc court holds that the Board’s conclusion is not supported by substantial evidence because its decision lacked any discussion or analysis of the issue, but merely stated “we once again find that there is insufficient evidence in the record that internal relocation is not reasonable.” Opinion at 678. But in the Board’s first order before remand, it had already explained its reasoning. There was no need for the Board to restate the same analysis in the second appeal.
Turning then to the analysis of the issue of internal relocation contained in the Board’s first order. The Board explained
that, after [Cece] moved to Tirane, she felt safe and protected and there is no indication that she had any further problems. See Tr. at 59-60. There is no indication that anyone was looking for the applicant in Tirane, nor pursuing her there. See Tr. at 35 (indicating that nothing happened to the applicant in Tirane). Thus, the applicant appears to have successfully relocated within Albania. See 8 C.F.R. § 1208.13(b)(3)(f). There is insufficient indication in the record that she has a well-founded fear of persecution in Tirane or in another city within Albania, outside of Korce. The applicant testified that, “if [Reqi] wanted to come after- me, he’d find me anywhere.” See Tr. at 34. However, there is no indication that Reqi (or any other trafficker) tried or was motivated to pursue the applicant outside of Korce. Thus, we find that the applicant failed to meet her burden of proof in this case.
R. 330-331.
The Board then concluded: “In sum, we can not find that there is sufficient evidence in the record ... that internal relocation is not reasonable.” R. 331.
The Board’s conclusion that Cece failed to show that safe relocation was not reasonable was supported by substantial evidence. Following her encounter with Reqi, Cece successfully relocated to Tirane and while there obtained a job teaching English. It is true that Cece was not living alone in Tirane — she was living in a dormitory room she shared with three other single women. But Cece was not home-bound. She had to go to and from work, and about her daily affairs. Not once during the year Cece lived in Tirane was she approached by Reqi or anyone else. While Cece claimed Reqi could find her anywhere, the Board could reasonably conclude, as it did, that because no one had approached Cece in Tirane, neither Reqi nor any other trafficker was motivated to pursue Cece outside of Korce. And given *688 Cece’s testimony that she had no problems in Tirane, the Board could reasonably conclude that “[t]here is insufficient indication in the record that she has a well-founded fear of persecution in Tirane or in another city within Albania, outside of Korce.” True, if she were living alone in Tirane she would fit one (of the many) profiles of those targeted by criminals. But when the profile of those targeted by criminals is so broad, as it is here, something more is necessary — some evidence that the individual has a well-founded fear that she will be targeted. In her case, Cece offered no evidence that she would actually be targeted in Korce and thus that she had a well-founded fear of persecution there. Without such evidence, the Board could reasonably conclude that Cece did not meet her burden of showing that internal relocation was not reasonable. Accordingly, the Board did not err in denying Cece’s application for asylum and the petition for review should be denied.
I DISSENT.

. The en Banc court rejected the formulation of young single Albania women in favor of "young Albania women living alone.” Opinion at 670 n. 3.

. http://tirana.usembassy.gov/press-releases2/ 2012-press-releases/2012-trafficking-m-person-report — albania-june-20-2012/2012trafficking-in-person-report-albania-june-202012.html (last visited May 8, 2013).