**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 15-2570

RUFINO AGUILON-LOPEZ,

Petitioner,

v.

LORETTA E. LYNCH, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Kayatta, Stahl, and Barron,
<u>Circuit Judges</u>.

Jason Panzarino and The Law Office of Johanna Herrero on brief for petitioner.
Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, Jocelyn Lopez Wright, Senior Litigation Counsel, Office of Immigration Litigation, and Stefanie Notarino Hennes, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

December 12, 2016

**STAHL**, **Circuit Judge**.  Petitioner Rufino Aguilon-Lopez, a native and citizen of Guatemala, seeks review of the Board of Immigration Appeals's ("BIA") final order affirming an Immigration Judge's ("IJ") decision denying his applications for withholding of removal and protection under the United Nations Convention Against Torture ("CAT").  Specifically, Aguilon-Lopez asserts that he and his family have suffered past persecution in Guatemala and, as a result, he holds a well-founded fear of future persecution. Aguilon-Lopez also faults the BIA for affirming the dismissal of his CAT claim, maintaining that were he to return to his home country, it is more likely than not that he would suffer torture at the hands of a Guatemalan gang with the acquiescence of the Guatemalan government.  Based on the record before us, we find the IJ decision and BIA order governed by controlling precedent. Consequently, we deny his petition.

## I. Facts & Background

Aguilon-Lopez illegally entered the United States in February 2009.  Approximately three and a half years later, after a traffic stop that revealed his undocumented status, the Department of Homeland Security personally served Aguilon-Lopez with a Notice to Appear ("NTA"), charging him with removability as an alien present in the United States without being admitted or paroled.  See 8 U.S.C. § 1182(a)(6)(A)(1).

- 2 -

In later written pleadings, Aguilon-Lopez admitted to the factual allegations contained in the NTA and conceded removability. A hearing before an IJ was held on August 28, 2013, during which Aguilon-Lopez argued that he was entitled to withholding of removal or, alternatively, CAT protection. Specifically with respect to his withholding of removal claim, Aguilon-Lopez argued that he was a member of a particular social group, residents of Guatemala who have been threatened with gang violence and recruitment to a gang, and have refused, and that his "life or freedom [was] threatened . . . because of [his] . . . membership in [this] particular social group . . . ." 8 U.S.C. § 1231(b)(3)(A).

Testifying in support of his applications, Aguilon-Lopez first explained that on two occasions in the mid-1980's, the Guatemalan government had falsely incarcerated his father. The second incident, he said, related to the government's mistaken belief that his father was affiliated with anti-government guerillas. However, Aguilon-Lopez admitted that his father has not experienced any problems with the Guatemalan government since that time. He also admitted to never personally suffering harm at the hands of the Guatemalan government as a result of its misunderstanding with his father.

Aguilon-Lopez did, however, recount several altercations between him, his family, and Guatemalan gang members. On one

occasion, when he was eight years old, Aguilon-Lopez encountered gang members who briefly detained him and demanded he "join them" or else he would be "against them."  Shortly thereafter, the gangs extorted Aguilon-Lopez's uncle for money.  When his uncle could not afford to make the payments, the gangs retaliated by firing guns into his uncle's house.  Though no one was injured and his family reported the incident to police, "nothing happened."

On another occasion, gang members violently robbed a group of people, including a then 16-year-old Aguilon-Lopez, at a public market.[1]  Police later arrived at the scene, but by then the gang members had fled.  Aguilon-Lopez remained in Guatemala for approximately three years after the incident, during which time he had no further encounters with gang members.

After hearing this testimony and evaluating the record, the IJ denied Aguilon-Lopez's application for relief and judged him removable.  Despite finding his testimony credible, the IJ concluded that Aguilon-Lopez had failed to establish past persecution based on a protected ground, finding that his testimony recounted only "a series of isolated events, not systemic mistreatment" and, alternatively, that "there [was] nothing to differentiate members of [his proposed social group] from others

---

[1] Aguilon-Lopez also noted that his brother was involved in a comparable incident sometime after Aguilon-Lopez arrived in the United States.

- 4 -

in the general populace in Guatemala." The IJ also denied Aguilon-Lopez's CAT claim because he failed to make a required showing that Guatemalan authorities would acquiesce to the harm he feared from the Guatemalan gangs.

Aguilon-Lopez timely filed for review before the BIA on September 29, 2014. The BIA declined to address whether Aguilon-Lopez established past persecution, but affirmed the IJ on the basis that Aguilon-Lopez had failed to show a nexus to a protected ground. The BIA also agreed that Aguilon-Lopez's testimony "[did] not suffice to establish" a CAT violation. This petition for review followed.

## II. Standard of Review

"In the immigration context, judicial review usually focuses on the BIA's decision." Jianli Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012). However, where the BIA "adopts portions of the IJ's findings while adding its own gloss, we review both the IJ's and the BIA's decisions as a unit." Renaut v. Lynch, 791 F.3d 163, 166 (1st Cir. 2015) (internal quotation marks and citation omitted).

Thus, we review the administrative findings of fact under the "'highly deferential' substantial evidence standard, under which we uphold [these findings] 'so long as they are supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Vega-Ayala v. Lynch, 833 F.3d

34, 38-39 (1st Cir. 2016) (quoting Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005)). We reverse "only if the record is such as to compel a reasonable factfinder to reach a contrary determination." Jianli Chen, 703 F.3d at 21. Legal determinations, meanwhile, are reviewed de novo, subject to appropriate principles of administrative deference. Larios v. Holder, 608 F.3d 105, 107 (1st Cir. 2010).

## III. Analysis

Withholding of removal is available if "the alien's life or freedom would be threatened in [their home country] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Aguilon-Lopez bears the burden of establishing his eligibility for withholding of removal, 8 C.F.R. § 1209.16(b), meaning he must demonstrate (1) a "clear probability" that he was or will be persecuted, see INS v. Stevic, 467 U.S. 407, 413 (1984), and (2) a nexus between the alleged persecution and one of the statutorily protected grounds, see Sompotan v. Mukasey, 533 F.3d 63, 68 (1st Cir. 2008). Since he seeks withholding of removal based on his membership in a particular social group, Aguilon-Lopez must establish that his proposed group is "(1) composed of members who share a common immutable characteristic; (2) defined with particularity; and (3) socially distinct within the society in question." Paiz-Morales v. Lynch, 795 F.3d 238, 244 (1st Cir.

- 6 -

2015) (quoting <u>Matter of M-E-V-G-</u>, 26 I. & N. Dec. 227, 237 (BIA 2014)).[2]

We have no need to analyze the first and third requirements because even if Aguilon-Lopez established that he shared an immutable characteristic with a distinct social group, his argument still fails because his putative social group was not defined with particularity.[3]  This is not the first time this Court has encountered, and rejected, the type of social group Aguilon-Lopez presses.  <u>See, e.g.</u>, <u>Paiz-Morales</u>, 795 F.3d at 242 ("members that oppose gang membership" in Guatemala); <u>Mendez-Barrera</u> v. <u>Holder</u>, 602 F.3d 21, 27 (1st Cir. 2010) ("young women recruited by gang members who resist such recruitment" in El Salvador); <u>Larios</u> v. <u>Holder</u>, 608 F.3d 105, 108-09 (1st Cir. 2010) ("young Guatemalan

---

[2] While the IJ expressly ruled that the harm Aguilon-Lopez experienced in Guatemala was not severe enough to constitute past persecution or constitute a basis for a well-founded fear of future persecution, we, like the BIA, do not reach the issue.  As we shall explain, his claim fails because, regardless of whether he established persecution, he did not establish his membership in a particularized social group.   8 U.S.C. § 1158(b)(1)(B)(1) (requiring that an applicant show that a protected ground was a "central reason" for the persecution); <u>see also</u> <u>Granada-Rubio</u> v. <u>Lynch</u>, 814 F.3d 35, 38 (1st Cir. 2016) (holding that an alien who alleges persecution on account of membership in a particular social group must show "at a bare minimum that []he is a member of a legally cognizable social group.").

[3] We agree with the Government that because of this requirement, we need not consider Aguilon-Lopez's argument that the BIA erred by failing to consider his social group claim under a mixed-motive analysis.  <u>See</u> <u>Aldana-Ramos</u> v. <u>Holder</u>, 757 F.3d 9, 18-19 (1st Cir. 2014) (describing the mixed-motive analysis).

men recruited by gang members who resist such recruitment"); Diaz-Ruano v. Holder, 420 Fed. App'x. 19, 21-22 (1st Cir. 2011) (unpublished opinion) ("young male[s] sought out for information and recruitment by the criminal gang of Guatemala").

After distilling these cases, it is evident why Aguilon-Lopez's proposed social group is not legally cognizable. In terms of particularity, Aguilon-Lopez only offers testimony that the Guatemalan gangs have a "very evolved system" for finding those who are "against them." While we do not doubt that these gangs have significant resources at their disposal to achieve such ends, the proposed social group remains comprised of people from an impermissibly broad variety of ages and backgrounds. See Matter of M-E-V-G-, 26 I. & N. at 238-39 ("The 'particularity' requirement relates to . . . the need to put 'outer limits' on the definition of a 'particular social group' . . . The group must also be discrete and have definable boundaries -- it must not be amorphous, overbroad, diffuse, or subjective.").

His proposed social group raises questions about the "type of conduct that may be considered 'recruit[ment]' and the degree to which a person must display 'resist[ance].'" Mendez-Barrera, 602 F.3d at 27 (quoting Faye v. Holder, 580 F.3d 37, 42 (1st Cir. 2009) (alterations in original). These group characteristics are highly amorphous, largely subjective, and

generally inhibit the "accurate separation of members from non-members."  Ahmed v. Holder, 611 F.3d 90, 94 (1st Cir. 2010).

Beyond this, Aguilon-Lopez has not established that his putative social group is a meaningfully distinct segment of the Guatemalan population.  Aguilon-Lopez was required to show that the proposed group is "generally recognized in the community as a cohesive group."  Mendez-Barrera, 602 F.3d at 26.  Like others before him, Aguilon-Lopez failed to offer any evidence to this effect.  See Larios, 608 F.3d at 109; Mendez-Barrera, 602 F.3d at 26-27.

We next turn to Aguilon-Lopez's fallback claim that he was persecuted on account of his and his family's political opinions.  This claim is misguided, and we find the BIA's treatment of it well-reasoned:

> Initially, we note that in his asylum application, the respondent did not indicate that he was seeking withholding of removal on account of political opinion[]. Even if he had, the evidence does not support such a claim . . . .  The respondent has not claimed that his father's detentions involved him, and the respondent testified that his father has had no problems with the Guatemalan authorities since the two incidents in the 1980s.

We also note that Aguilon-Lopez has never personally experienced harm at the hands of the Guatemalan government for any reason, let alone in relation to his father's suspected anti-government beliefs.  See Mendez-Barrera, 602 F.3d at 27 ("Holding religious or political beliefs, without more, is not sufficient to

- 9 -

show persecution on account of those beliefs . . . . There must be evidence that the would-be persecutors knew of the beliefs and targeted the belief holder for that reason.") (emphasis in original). Accordingly, we find no merit to Aguilon-Lopez's challenge to this aspect of the BIA's decision.

Finally, Aguilon-Lopez's claim for protection under the CAT similarly fails because he has not shown that he will be subject to torture through the acquiescence or willful blindness of a public official.[4] See Aldana-Ramos v. Holder, 757 F.3d 9, 19 (1st Cir. 2014) ("A petitioner seeking CAT protection must show 'it is more likely than not' that he would be subject to torture 'by or with the acquiescence of a government official.'") (quoting Nako v. Holder, 611 F.3d 45, 50 (1st Cir. 2010)).

Aguilon-Lopez has not presented any discrete evidence in support of his claim and instead relies on generalized State Department country conditions reports. "Although such reports are sometimes helpful to an alien's claim, their generic nature is such that they are rarely dispositive." Mendez-Barrera, 602 F.3d at 28. Such is the case here: while the submitted reports clearly show that gang activity in Guatemala is a serious problem, they do not compel a conclusion that the Guatemalan government is a mere

---

[4] We bypass the government's argument that Aguilon-Lopez has waived the CAT issue because his CAT claim fails in any event. See Vega-Ayala, 833 F.3d at 39.

- 10 -

bystander to gang violence or that it would acquiesce or turn a blind eye to Aguilon-Lopez's possible torture.

Aguilon-Lopez's own testimony that the police "can't do anything about . . . gangsters" leads to the same conclusion: though Guatemalan authorities may be mired in the arduous task of containing gang violence, we struggle to see how the proffered evidence supports, let alone compels, a conclusion contrary to that of the agency. See Granada-Rubio, 814 F.3d at 40 (affirming CAT denial even though country reports showed that the government had not adequately dealt with complaints of torture and "cruel, inhumane, or degrading treatment or punishment perpetrated by public officials"). Given these deficiencies, we hold that substantial evidence supports the BIA's rejection of his CAT claim.

## IV. Conclusion

For the reasons stated above, we deny the petition for review.