**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 14-2155

VICTOR MANOLO ESCOBAR TELLES,

Petitioner,

v.

LORETTA E. LYNCH,[*]
Attorney General of the United States,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
AN IMMIGRATION JUDGE

Before

Lynch, Lipez, and Thompson,
<u>Circuit Judges</u>.

Randall L. Johnson and Johnson and Associates, P.C. on brief
for petitioner.
Todd J. Cochran, Trial Attorney, Office of Immigration
Litigation, United States Department of Justice, Civil Division,
Benjamin C. Mizer, Principal Deputy Assistant Attorney General,
and Jennifer L. Lightbody, Senior Litigation Counsel, Civil
Division, on brief for respondent.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General
Loretta E. Lynch has been substituted for former Attorney General
Eric H. Holder, Jr., as the respondent.

March 9, 2016

**LYNCH**, **Circuit Judge**.  This case involves a petition to review an Immigration Judge's ("IJ") denial of relief based on his determination that the petitioner, whose prior order of removal had been reinstated, failed to establish a reasonable fear of persecution or torture, a necessary prerequisite for withholding or deferral of removal under these circumstances.  See 8 C.F.R. §§ 241.8(e), 1241.8(e); 8 C.F.R. §§ 208.31(g), 1208.31(g).

Because the petitioner's claims easily fail on the merits, we assume hypothetical jurisdiction.[1]  See Royal Siam Corp. v. Chertoff, 484 F.3d 139, 143 (1st Cir. 2007); see also Global NAPs, Inc. v. Verizon New Eng., Inc., 706 F.3d 8, 12–13 (1st Cir. 2013) (per curiam).  We hold that the petitioner does not state a colorable constitutional or legal claim and that substantial evidence supports the IJ's holding that the petitioner has not established a "reasonable possibility" of persecution or torture. See 8 C.F.R. §§ 208.31(c), 1208.31(c).

I.

Victor Manolo Escobar Telles, a native and citizen of Guatemala, says that he initially entered the United States in 1994 or 1995.  Between April 2003 and February 2004, he was charged with and convicted of several offenses, including indecent

---

[1]    While the government concedes jurisdiction in this case, the jurisdictional question may warrant a more thorough analysis, which we reserve for a future case.

exposure, lewd and lascivious acts, and assault and battery. On August 5, 2004, he was issued a Notice to Appear alleging he entered the United States without being admitted or paroled and did not possess valid nonimmigrant documentation. Escobar Telles applied for withholding of removal, relief under the United Nations Convention Against Torture ("CAT"), and cancellation of removal under Immigration and Nationality Act ("INA") § 240A(b)(1). He subsequently withdrew the application for cancellation of removal. After a hearing, an IJ issued an oral decision on June 20, 2006, denying Escobar Telles's applications for withholding of removal and relief under the CAT and ordering Escobar Telles removed to Guatemala.

Escobar Telles appealed to the Board of Immigration Appeals ("BIA"), which dismissed his appeal on December 31, 2007. The BIA explained that Escobar Telles did not object to the IJ's determination that he was barred from withholding of removal under INA § 241(b)(3)(B)(ii) because he was convicted of a "particularly serious crime," see 8 U.S.C. § 1231(b)(3)(B)(ii), and so affirmed the IJ's denial of that form of relief. The BIA also noted that Escobar Telles explicitly told the IJ that he was not pursuing relief under the CAT but found that even if he had not made this statement, it would affirm the IJ's denial of relief under the CAT on the merits because Escobar Telles failed to show it was more

- 4 -

likely than not that he would suffer torture by the Guatemalan government or with its acquiescence.

Escobar Telles did not seek review of the BIA's order and left the United States on March 26, 2008. He later reentered the United States without permission. Escobar Telles said that he reentered later in 2008.

In February 2014, Escobar Telles was arrested for unlicensed operation of a motor vehicle and failure to register as a sex offender. He was issued a Notice of Intent/Decision to Reinstate Prior Order on March 3, 2014. Escobar Telles refused to sign an acknowledgement and response to the determination and refused to give a statement to Department of Homeland Security officials.

Escobar Telles expressed a fear of harm if he were to return to Guatemala, and on September 16 and 26, 2014,[2] went before an Asylum Officer ("AO") for a reasonable fear determination.[3] See

---

[2]  The government acknowledges that the date on the Asylum Officer's report (September 18, 2014) appears to be inaccurate because the interviews had not been completed by then.

[3]  Under 8 U.S.C. § 1231(a)(5), an alien who reenters illegally after having been removed is barred from challenging his prior removal order and applying for "any relief" under Title 8, Chapter 12. See 8 U.S.C. § 1231(a)(5). However, federal regulations allow "an alien whose prior order of removal has been reinstated" who expresses a fear of returning to the country of removal to go before an AO for a determination of "whether the alien has a reasonable fear of persecution or torture." 8 C.F.R. §§ 241.8(e), 1241.8(e). In this "reasonable fear screening process," if the AO determines that the alien has a reasonable

8 C.F.R. §§ 208.31(a)-(b), 1208.31(a)-(b). The AO concluded that Escobar Telles failed to establish a reasonable fear of persecution or torture. In addition, the AO found Escobar Telles's testimony not credible because of inconsistencies between his claims before the AO and those brought in his 2006 hearing.

The AO explained that even if Escobar Telles's testimony had been credible, his claims would still fail because he did not demonstrate a nexus between the threats he allegedly received and a "protected ground of the refugee definition," and because his fear of gang violence was "rooted entirely in speculation." Finally, the AO noted that while Escobar Telles claimed people may seek to harm him in Guatemala based on his sex crime convictions, this claim was "undermined by his assertion that it would be possible to relocate to an area in Guatemala where the people would be unaware of his sex crimes in the U.S.," and in any event, "it is well established law that a person's criminality cannot be the basis of an asylum claim."

Escobar Telles requested that an IJ review the AO's decision, see 8 C.F.R. §§ 208.31(f)-(g), 1208.31(f)-(g), and on

---

fear of persecution or torture, then the AO refers the case to an IJ to determine whether the alien is eligible for withholding of removal. Regulations Concerning the Convention Against Torture, Interim Rule with Request for Comments, 64 Fed. Reg. 8478, 8485 (Feb. 19, 1999); see also 8 C.F.R. §§ 208.31(e), 1208.31(e). If the AO determines that the alien has not established a reasonable fear, then the alien can request that an IJ review this negative determination. 8 C.F.R. §§ 208.31(g), 1208.31(g).

October 29, 2014, an IJ held a hearing to review the AO's determination. Escobar Telles's counsel said that the only relief sought was "deferral under CAT" and that because of Escobar Telles's prior convictions they "wouldn't even be trying for withholding." At the hearing, Escobar Telles testified that he was afraid to return to Guatemala because he feared being killed as a result of witnessing a murder in 1992. He said that he came to the United States in 1994 because "they were always looking for me," but he could not identify the person who was purportedly looking for him and trying to harm him. Escobar Telles testified that someone had sent letters to his house signed "Jose." He said that the only time he had seen the person purportedly threatening him "was when [the man] committed the murder, and he got out of the car and he threatened [Escobar Telles]." Escobar Telles also testified that he never told the police about these threats because "it would get back to the person and then they would end up killing [him]."

In addition, Escobar Telles said that he was beaten up around 1992 or 1993 by "people that would pass as Catholics . . . because [he] converted to the Evangelical religion." He did not report this to the police either. Escobar Telles's counsel also submitted evidence that he said showed Escobar Telles's family had been targeted by gang members and that two of his cousins had been murdered. Then, Escobar Telles's sister testified about problems

that her family experienced with gang members in Guatemala as well as the murder of the two cousins.[4]  Escobar Telles's counsel argued "that the Asylum Officer erred in finding only a generalized fear of persecution when [they had] all these specific instances targeting [Escobar Telles's] family and his family members," and he pointed to the testimony and evidence submitted.

The IJ found that Escobar Telles had not established a reasonable possibility of torture.  The IJ explained that Escobar Telles "made no showing to indicate that the government of Guatemala acquiesces in the torture of the respondent.  Rather, what has been presented to the Court is that there is a generalized fear of crime in Guatemala."  This petition for review followed.[5] See 8 C.F.R. §§ 208.31(g)(1), 1208.31(g)(1).

## II.

The government, agreeing with the petitioner, asserts that we have "jurisdiction to review the Immigration Judge's concurrence with the asylum officer's negative reasonable fear

---

[4]    Although Escobar Telles's counsel had originally said that Escobar Telles's ex-wife would testify as well, after Escobar Telles's sister testified, Escobar Telles's counsel told the IJ that it was not necessary for the ex-wife to testify.

[5]    Escobar Telles sought a stay of removal pending resolution of his petition, which was denied on December 2, 2014. He then filed a petition for panel rehearing, which was denied on December 10, 2014.  According to Escobar Telles, he was removed to Guatemala on December 11, 2014.

determination."[6]  However, the parties disagree on the applicable standard.  No circuit has yet defined the standard of review we employ to review the IJ's decision under these circumstances.

The government urges us to apply a "'facially legitimate and bona fide reason' standard of review to an Immigration Judge's threshold determination that an alien, who is the proper subject of a reinstated order of removal, does not hold a reasonable fear of torture so as to warrant a full merits hearing on an application for CAT protection."  It relies on Kleindienst v. Mandel, 408 U.S. 753 (1972), where the Supreme Court applied this standard to a First Amendment challenge to the exclusion of an alien.  Id. at 769-70.  The Court explained that, "plenary congressional power to make policies and rules for exclusion of aliens has long been

---

[6]     The issue of jurisdiction is more complicated than the government suggests.  The underlying statutory provision provides that an alien who has reentered illegally after having been removed is not eligible for any relief under Title 8, Chapter 12, see 8 U.S.C. § 1231(a)(5), but federal regulations provide for a reasonable fear screening process.  See 8 C.F.R. §§ 241.8(e), 1241.8(e).  The regulations then provide that if the IJ concurs with the AO's negative determination, then "[n]o appeal shall lie from the immigration judge's decision."  8 C.F.R. §§ 208.31(g)(1), 1208.31(g)(1).  Given the uncertainty regarding our jurisdiction, and our ability to easily resolve the case on the merits, "we believe that this is a case in which we may -- and should -- bypass the jurisdictional question."  Royal Siam Corp., 484 F.3d at 143; see Global NAPs, Inc., 706 F.3d at 12-13 (explaining that "[w]hen confronted with non-constitutional challenges to jurisdiction," and "when a party 'easily wins an affirmance on the substantive issue,' we may 'decline to decide the jurisdictional issues raised by it.'" (quoting Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd., 325 F.3d 54, 59 (1st Cir. 2003))).

firmly established," id., and "Congress has delegated conditional exercise of this power to the Executive," id. at 770. It held that "when the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant." Id.[7]

However, assuming hypothetically that we do have jurisdiction, we need not and do not reach the question of whether this standard should apply to an IJ's concurrence with an AO's negative reasonable fear determination because Escobar Telles's claim fails even under the substantial evidence standard he says should apply. There was substantial evidence to support the IJ's concurrence. Escobar Telles testified that while he was receiving threats from "Jose," he never reported these threats to the police. Nor did he report the instances of being beaten up around 1992 or 1993 for "convert[ing] to the Evangelical religion." The IJ acknowledged Escobar Telles's testimony and evidence regarding the

_____

[7] The government also relies, inter alia, on Kerry v. Din, 135 S. Ct. 2128, 2139-40 (2015) (Kennedy, J., concurring in the judgment) (applying Mandel to a constitutional challenge to the explanation received regarding a visa denial) and Fiallo v. Bell, 430 U.S. 787, 794-95 (1977) (applying Mandel to a constitutional challenge to the qualifications for special preference immigration status).

gang violence his family experienced.  The IJ also heard testimony from Escobar Telles's sister about this violence and the murder of two of their cousins.  Escobar Telles's sister said that the police were investigating at least one of their cousins' murders, but she also acknowledged that they did not know who was responsible for the murders.  There was ample basis for the IJ to concur in the determination that Escobar Telles had not established a reasonable possibility of torture.  See 8 C.F.R. §§ 208.18(a)(1), 1208.18(a)(1) (explaining that under the CAT, "[t]orture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity").

To the extent Escobar Telles purports to make a due process argument, this claim is not even colorable.  The IJ heard Escobar Telles's testimony as well as that of his sister.  Indeed, Escobar Telles declined to call his ex-wife because he did not think it was "necessary."  Notwithstanding Escobar Telles's suggestions to the contrary, there is nothing in the record that suggests the IJ did not consider all of the testimony and evidence presented.  Cf. Telyatitskiy v. Holder, 628 F.3d 628, 631 (1st Cir. 2011) ("An IJ does not err merely by failing to address specifically each piece of evidence the petitioner presented. . . .

The record reveals that the IJ considered the totality of the evidence presented, even if it did not recite that evidence in all its detail." (citations omitted)).  There was no due process violation.

III.

We <u>deny</u> Escobar Telles's petition for review.