**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 16-1154

SILVIA VERÓNICA GUEVARA-DE VILORIO,

Petitioner,

v.

LORETTA E. LYNCH,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Lipez, and Thompson,
Circuit Judges.

Jason Panzarino and the Law Office of Johanna Herrero, on brief for petitioner.
Zoe J. Heller, Trial Attorney, Office of Immigration Litigation, U.S. Department of Justice, Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, and Paul Fiorino, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

January 9, 2017

**TORRUELLA**, **Circuit Judge**.  Silvia Verónica Guevara-de Vilorio ("Guevara") petitions for review of a decision by the Board of Immigration Appeals ("BIA"), which denied her application for asylum and withholding of removal under §§ 208 and 241(b)(3) of the Immigration and Naturalization Act, 8 U.S.C. §§ 1158, 1231(b)(3), and for protection under the Convention Against Torture ("CAT"), 8 C.F.R. §§ 1208.16-18.  Because Guevara has failed to establish persecution or a well-founded fear of persecution, and has likewise failed to establish that she is a member of a protected group, we deny her petition for review.

## I.  Background

Guevara was born in El Salvador on March 8, 1981, and entered the United States in November 2005.  After she was charged with removability on September 14, 2006, she filed her asylum application, and also requested withholding of removal and CAT protection.  She has resided in Massachusetts for over a decade, and has no criminal history or criminal arrests.  She has three U.S. citizen children.

Before an Immigration Judge ("IJ"), Guevara testified that while she, her husband, and their two children were living in El Salvador, her husband Manuel Vilorio ("Vilorio") had run a successful trucking business.[1]  Members of a powerful gang demanded

---

[1] Vilorio had entered the United States in 1993 and applied for

weekly payments from Vilorio and threatened him and his family with death if he did not pay the extortion demands. Vilorio told Guevara that on one delivery, he had been followed by a car filled with gang members wielding guns, and on another occasion gang members had beaten him. Her husband never paid the extortion demands, and, fearing harm, came to the United States in April 2003. After Vilorio left the country, gang members continued to frequent Guevara's home, demanding to know the whereabouts of her husband and leaving notes demanding money and threatening her with harm if she did not comply, although she was never physically harmed. Guevara testified that she cannot return to El Salvador because the gangs are still powerful and because she would not be able to support herself there.

Guevara was initially a derivative on her husband's asylum application. Vilorio separated from the family in 2010. Still, the couple were scheduled to attend an immigration court hearing on December 11, 2011. After Vilorio failed to attend this hearing, the judge ordered his removal in absentia. Guevara's case was severed from her husband's and she filed her own

---

asylum in 1994, claiming that he and his family had been persecuted by guerrillas and ex-guerrillas. Vilorio returned to El Salvador in 1998, and married Guevara in 1999. He returned to the United States in 2003, due to threats from gangs in El Salvador.

application for asylum and withholding of removal on February 6, 2013.

On September 19, 2014, Guevara attended a hearing before the IJ, at the end of which the IJ issued an oral decision denying Guevara's asylum, withholding of removal, and CAT protection applications, and finding that she was not eligible for voluntary removal. The IJ found Guevara's testimony not credible based on discrepancies between statements made in Vilorio's asylum application -- by then already two decades old -- and Guevara's testimony. Specifically, the IJ noted that Vilorio had made no mention of a trucking business, but rather had indicated that he had been a cook; Vilorio had stated that he had left El Salvador because he had been threatened and recruited by the guerrillas; and Vilorio had stated that he had never been threatened or physically harmed. The IJ further noted that though Guevara testified that the gang members continued to extort money from her after Vilorio had left the country, she made no such claim in her application -- and the IJ did not find convincing her explanation that she forgot to put it down. The IJ did acknowledge that Vilorio stated that he had once been followed by gang members presumably seeking to steal his car or money.

Alternatively, the IJ found that even if her testimony had been credible, Guevara had failed to demonstrate that she

-4-

either had been a victim of past persecution or that she had a well-founded fear of future persecution based on a statutorily protected ground. He found that the threats she received were not immediate or menacing enough to rise to the level of persecution. To the extent that Guevara fears extortion and harm by gangs if she were to return, the IJ found that such acts do not constitute persecution on account of a protected ground. Though Guevara claimed that she would be harmed on account of her membership in a particular social group made up of individuals perceived as wealthy, the IJ ruled that the group was not sufficiently particular or socially distinct. Even assuming the cognizability of such a group, the IJ found that Guevara had not demonstrated the required nexus between the harm she fears and her status as the wife of a man with a lucrative business. Because she failed to demonstrate sufficient proof for her asylum application, the IJ found that she necessarily failed to meet the higher burden of proof required for withholding of removal, and that she had failed to establish the necessary grounds for CAT protection. Thus, the IJ denied her relief and protection applications. Guevara appealed to the BIA on October 14, 2014, but did not file an appeal brief.

On January 15, 2016, the BIA affirmed the IJ's denial of asylum. Without addressing the IJ's adverse credibility finding,

the BIA found that even if she had testified credibly, Guevara had failed to establish past persecution or an objectively reasonable fear of future persecution on a protected ground. The threats were neither so immediate nor so menacing as to constitute persecution, and the gang's extortion was criminal but not persecutory. Similarly, the BIA found that fear of gang violence and extortion is not "on account of" a protected ground. The BIA found no evidence of political opinion, and determined that Guevara's proposed social group of wealthy individuals lacked the particularity and social distinction to constitute a particular social group. The BIA likewise found that because she had not met her burden for asylum, Guevara necessarily had not satisfied the higher clear probability standard for withholding of removal, nor had she demonstrated that it was more likely than not that she would be tortured in El Salvador so as to qualify for CAT protection. Guevara now petitions this Court to review the BIA's decision.

## II. **Standard of Review**

This Court reviews the BIA's findings of fact and determinations of credibility under a "substantial evidence" standard. See 8 U.S.C. § 1252(b)(4)(B); INS v. Elías-Zacarías, 502 U.S. 478, 481 n.1 (1992). A court "accept[s] the agency's findings of fact, including credibility findings, as long as they

-6-

are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Segran v. Mukasey, 511 F.3d 1, 5 (1st Cir. 2007) (quoting Elías-Zacarías, 502 U.S. at 481). Under this deferential standard of review, a court will reverse only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "Unless the evidence 'points unerringly in the opposite direction,' that is, unless it compels a contrary conclusion, the findings must be upheld." Segran, 511 F.3d at 5 (quoting Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004)). Questions of law are reviewed de novo. Liu v. Holder, 714 F.3d 56, 59 (1st Cir. 2013).

### III. Discussion

Guevara spends substantial portions of her briefs assailing the IJ's determination that she lacked credibility. However, the BIA did not rely on the IJ's credibility determination. Rather, the BIA "affirm[ed] the Immigration Judge's denial of asylum based on the determination that, even if the respondent testified credibly, she did not establish past persecution or an objectively-reasonable fear of future persecution on a protected ground under the Act." "Where the BIA does not adopt an IJ's opinion but instead makes an independent, superceding decision, we review the decision of the BIA, and not that of the IJ. Because the BIA made no determination of

-7-

[petitioner]'s credibility in reaching its decision, [petitioner]'s credibility is not an issue here." Xu v. Gonzales, 424 F.3d 45, 48 (1st Cir. 2005)(internal citations omitted). Therefore, "[w]e cannot and need not review the credibility determination of the IJ." Id.

As to her remaining arguments, Guevara bears the burden of demonstrating that she is "unable or unwilling to return" to her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). She has failed to meet this burden.

Guevara contends that she is a member of a social group, namely successful entrepreneurs who resist the demands of gangs. But "we have rejected proposed social groups 'based solely on perceived wealth, even if signaling an increased vulnerability to crime,' regardless of why one is perceived as wealthy." Beltrand-Alas v. Holder, 689 F.3d 90, 94 (1st Cir. 2012) (quoting García-Callejas v. Holder, 666 F.3d 828, 830 (1st Cir. 2012)). We have also "decided a number of cases that have rejected the argument that people who oppose gang membership or recruitment are members of a particular social group." Id. at 93 (citing García-Callejas, 666 F.3d at 830 (1st Cir. 2012)).

Guevara also argues that the threats from gangs she faced in El Salvador amount to persecution, and she is therefore entitled to a presumption of future persecution. In order for threats to rise to the level of persecution, however, they must have been "so menacing as to cause significant actual 'suffering or harm.'" Bonilla v. Mukasey, 539 F.3d 72, 77-78 (1st Cir. 2008) (holding that the BIA was not compelled to find past persecution based upon evidence of a string of threatening phone calls, a threatening letter identifying Bonilla as a military target, and graffiti). The threats Guevara has alleged were not so menacing as to compel a reasonable adjudicator to find that Guevara has suffered from persecution, and Guevara has not alleged any physical harm. Guevara's efforts to claim that she suffered persecution through emotional harm are similarly to no avail. This Court recognizes that "under the right set of circumstances, a finding of past persecution might rest on a showing of psychological harm." Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004). However, Guevara failed to provide any testimony or other evidence that the threatening notes caused her any psychological harm.

## IV. Conclusion

Guevara's petition for review is denied.