**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 29, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

JOSE GUADALUPE
CADENAS-CAMPUZANO,

  Petitioner,

v.

MERRICK B. GARLAND,* United States
Attorney General,

  Respondent.

No. 21-9524
(Petition for Review)

_____

### ORDER AND JUDGMENT†
_____

Before **PHILLIPS**, **BALDOCK**, and **BRISCOE**, Circuit Judges.
_____

Petitioner Jose Guadalupe Cadenas-Campuzano, a native and citizen of

Mexico, seeks review of an immigration judge's ("IJ") decision concurring with a

Department of Homeland Security ("DHS") asylum officer's finding that

Cadenas-Campuzano did not have a reasonable fear of persecution or torture

---

  * Pursuant to Fed. R. App. P. 43(c)(2) Merrick B. Garland is substituted for
William P. Barr, former Attorney General, as a respondent in this matter.

  † After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.**Error! Main Document Only.**

following the reinstatement of his prior removal order.  Exercising jurisdiction under 8 U.S.C. § 1252, we DENY Cadenas-Campuzano's petition for review.

## I

In 1996, Cadenas-Campuzano was admitted to the United States as a lawful permanent resident.  DHS Certified Administrative Record ("DHS AR") at 44.  In 1999, he was convicted of sale or transportation of a controlled substance (methamphetamine) in violation of California Penal Code § 11379(a) and was sentenced to two years' confinement.  *Id.*

In February of 2001, DHS initiated removal proceedings against Cadenas-Campuzano by serving him a Notice to Appear ("NTA").  *Id.* at 43–44.  In the NTA, DHS charged Cadenas-Campuzano with removability under 8 U.S.C. § 1227(a)(2)(B)(i) (violation of a law related to a controlled substance), 8 U.S.C. § 1227(a)(2)(A)(iii) (aggravated felony conviction), and 8 U.S.C. § 1227(a)(2)(A)(i) (crime involving moral turpitude within five years of admission).  *Id.*

On March 5, 2001, an IJ ordered Cadenas-Campuzano removed from the United States to Mexico.  *Id.* at 38.  Later that same day, Cadenas-Campuzano was physically removed to Mexico.  *Id.* at 5.  Approximately two days after his removal, he illegally reentered the United States.  *Id.* at 20–21.

On January 28, 2021, DHS served Cadenas-Campuzano with a Form I-871 Notice of Intent/Decision to Reinstate Prior Order.  *Id.* at 34.  He declined to sign the Form I-871 and indicated that he did not wish to make a statement contesting DHS's determination.  *Id.* at 7–10, 34.  DHS issued a decision reinstating the March 5, 2001

removal order against him. *Id.* at 34. When he expressed a fear of returning to Mexico, he was referred to DHS's Citizenship and Immigration Services for a reasonable fear interview with an asylum officer. *Id.* at 11–12; Executive Office of Immigration Review Certified Administrative Record ("EOIR AR") at 51–52; *see also* 8 C.F.R. §§ 208.31(a)–(b), 241.8(e).

In early February of 2021, Cadenas-Campuzano appeared with counsel before an asylum officer for his reasonable fear interview. *See* DHS AR at 16–31. He told the asylum officer that he was afraid that cartels and their "hitman" would harm him if he returned to Mexico. *Id.* at 21–22. According to Cadenas-Campuzano, in 2009, members of the Nueva Generacion Cartel killed his cousin's husband because he was the Vice President of the city of Zirandaro, Guerrero. *Id.* at 22. Cadenas-Campuzano stated that one year later, in 2010, the same cartel kidnapped his cousin's daughter and held her hostage for nearly a month until "she got away." *Id.* He explained that his cousin went to the police but received no help, and his family in Mexico suspected that the police worked with the cartels. *Id.* at 26. He stated that after the 2009 and 2010 incidents, his cousin and her family moved to Cuernavaca. *Id.* at 22. He said that his family had lived in Cuernavaca for approximately seven years without being harmed or threatened, but they "live in fear every day." *Id.*

Cadenas-Campuzano also told the asylum officer that he believed the cartel would target him if he returned to Mexico because the cartel would want money from him. *Id.* at 22–23. He said that because he had lived in the United States for many years, he would be identified "as an American in Mexico." *Id.* at 27. He stated that

3

the cartel had targeted and extorted his uncle and cousins, who were melon farmers in

Guerrero, because they had money from their crops. *Id.* at 22–23. He again

emphasized that his family did not report these incidents to the police because the

police and cartels "work together" and reporting is "pointless." *Id.* at 26–27.

Based on this information, the asylum officer determined that Cadenas-

Campuzano had not established a reasonable fear of persecution or torture in Mexico. *Id.*

at 18; EOIR AR at 31. With regard to persecution, the asylum officer found that

Cadenas-Campuzano failed to establish a reasonable possibility that the harm he feared

would be on account of a protected ground. DHS AR at 10; EOIR AR at 47. With

regard to torture, the asylum officer found that Cadenas-Campuzano had not established

that there was a reasonable possibility that he would suffer severe physical or mental pain

or suffering constituting torture. DHS AR at 10; EOIR AR at 47.

Cadenas-Campuzano requested that an IJ review the asylum officer's negative

reasonable fear determination. DHS AR at 10–12; EOIR AR at 47; *see* 8 C.F.R.

§§ 208.31(f)–(g), 1208.31(f)–(g). DHS therefore issued a "Notice of Referral to

Immigration Judge," which it filed with the immigration court and served on

Cadenas-Campuzano by regular mail. DHS AR at 11–12; EOIR AR at 51–52.

On February 19, 2021, Cadenas-Campuzano appeared with counsel before an

IJ in reasonable fear proceedings. *See* EOIR AR at 3–14. Through counsel,

Cadenas-Campuzano argued that his reasonable fear proceedings were improper

because the immigration court's file did not contain a copy of the reinstated removal

order. *Id.* at 11–12. The IJ acknowledged that he did not see "an actual

reinstatement order in the file that came to [him]" but that he had "an official document here that [he thought] is inherently reliable saying that there is one." *Id.* at 12–13. The IJ further stated that "the documents that have been filed with the Court indicate that there is a reinstatement order" and that he "[did not] have any evidence that there isn't one." *Id.* The IJ also reiterated that his authority was limited to reviewing the asylum officer's reasonable fear determination. *Id.*

Cadenas-Campuzano confirmed that the asylum officer's summary of his claim was accurate and contained all of the important information he had provided. *Id.* at 7–8. Through counsel, Cadenas-Campuzano argued that he feared persecution on account of membership in a particular social group defined as his family of landowners and farmers. *Id.* at 8–10.

On the same day, the IJ issued a written order concurring with the asylum officer's negative reasonable fear determination. *Id.* at 1–2. The IJ found that Cadenas-Campuzano had not established a reasonable fear of persecution in Mexico because there was "[n]o nexus to a protected ground," "no involvement by public officials," and "no inability or unwillingness to control third parties by public officials." *Id.* at 1. In addition, the IJ found that Cadenas-Campuzano had not established a reasonable possibility of eligibility for protection under the Convention Against Torture because he had not demonstrated the requisite "instigation, consent, or acquiescence of public officials."[1] *Id.*

---

[1] Cadenas-Campuzano does not challenge the IJ's Convention Against Torture determination on appeal.

Cadenas-Campuzano timely filed a petition for review to this court.

## II

Cadenas-Campuzano seeks review of the IJ's decision concurring with the asylum officer's finding that he did not have a reasonable fear of persecution or torture following the reinstatement of his prior removal order. Cadenas-Campuzano argues that (1) the agency violated his due process rights by failing to serve the reinstatement order before the reasonable fear review hearing; (2) the reinstatement order was improper and Cadenas-Campuzano was deprived of due process when the Government failed to properly serve the reinstatement order; and (3) the findings of the IJ and asylum officer are not supported by evidence on the record and are the result of a failure to apply the proper legal standard for reasonable fear determination.

### A.    Due Process

Cadenas-Campuzano raises two due process challenges. First, he claims that he was deprived of due process because DHS did not serve the reinstatement order to the IJ before his reasonable fear review hearing. Second, he claims that he was deprived due process when the Government failed to properly serve him with the reinstatement order and when DHS failed to comply with the procedural mandates of 8 C.F.R. § 241.8.

Under 8 U.S.C. § 1231(a)(5), the Attorney General is authorized to reinstate a prior removal order against a noncitizen who has reentered illegally. *See Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 33 (2006) ("For some time, the law has

6

provided that an order for removing an alien present unlawfully may be reinstated if he leaves and unlawfully enters again."). Congress intended reinstatement to be "a different and far more summary procedure than removal." *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 491 (9th Cir. 2007). As the Ninth Circuit observed, "[w]hile aliens have a right to fair procedures, they have no constitutional right to force the government to re-adjudicate a final removal order by unlawfully reentering the country." *Id.* at 498. Accordingly, an immigration officer is required to make three predicate findings before reinstating an individual's prior removal order: (1) the identity of the individual, (2) the individual's being subject to a prior order of removal, and (3) the individual's having "unlawfully reentered" the United States. 8 C.F.R. § 241.8(a); *see also Duran-Hernandez v. Ashcroft*, 348 F.3d 1158, 1162–63 (10th Cir. 2003).

The reinstatement regulations also require the immigration officer to obtain the prior order of removal relating to the noncitizen, provide written notice to the noncitizen, provide the noncitizen an opportunity to give a statement, and consider all relevant evidence, including any statements made by the noncitizen. *See* 8 C.F.R. §§ 241.8(a)–(c). To establish a claim that the procedure for the reinstatement of removal orders established by 8 C.F.R. § 241.8 violates Cadenas-Campuzano's right to due process, Cadenas-Campuzano must demonstrate that he suffered prejudice as a result of DHS's reinstatement procedure. *Lorenzo v. Mukasey*, 508 F.3d 1278, 1284 (10th Cir. 2007).

### 1.    *The Reinstatement Order Was Not a Charging Document*

Cadenas-Campuzano asserts that his reinstatement order had the same effect as an NTA and therefore his due process rights were violated because DHS failed to provide a copy of his "charging document" (the reinstatement order) to the IJ before his reasonable fear review hearing.  In support, Cadenas-Campuzano cites *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021), which states that the government must serve an NTA that contains all of the requisite notice enumerated in 8 U.S.C. § 1229(a)(1) to trigger the "stop-time rule" for cancellation of removal.  Cadenas-Campuzano also argues that the IJ's "hasty concurrence" that allowed the IJ to proceed without proper service of a charging document "runs afoul" of *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), which states that a putative NTA that fails to designate the specific time or place of the noncitizen's removal proceedings is not a "notice to appear under § 1229(a)" and does not trigger the "stop-time rule."  Aplt. Br. at 14.

Cadenas-Campuzano's challenge is without merit.  While Cadenas-Campuzano is correct that the record shows that the IJ did not have a copy of the reinstatement order, the reinstatement order is a final order of removal, not a charging document. *See* 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8(a); *see also Avila v. U.S. Atty. Gen.*, 560 F.3d 1281, 1284 (11th Cir. 2009) ("An order of reinstatement is a final order of removal under § 1252(a)(1).").  *Niz-Chavez* and *Pereira* are not applicable here because Cadenas-Campuzano's case does not involve cancellation of removal or removal proceedings.  Instead, the record shows that the reinstatement order did not initiate proceedings before the IJ—the referral notice ("Notice of Referral to

8

Immigration Judge"), filed by DHS after Cadenas-Campuzano requested the IJ's review, initiated his reasonable fear review hearing. *See* DHS AR at 11–12; EOIR AR at 51–52. Since the reinstatement order did not initiate proceedings before the IJ, it was not subject to the IJ's review. *See* 8 C.F.R. §§ 208.31(f)–(g); *Morales-Izquierdo*, 486 F.3d at 498 ("[A] previously removed alien who reenters the country illegally is not entitled to a hearing before an immigration judge to determine whether to reinstate a prior removal order."); *see also Luna-Garcia v. Holder*, 777 F.3d 1182, 1183 (10th Cir. 2015) (if alien obtains relief in the reasonable fear proceedings, reinstated removal order is not vacated or withdrawn and only its execution is withheld).

Moreover, the IJ stated that while he did not see an actual reinstatement order in the file that came to him, he had "an official document here that [he thought] is inherently reliable saying that there is one." EOIR AR at 13. The IJ further stated that "the documents that have been filed with the Court indicate that there is a reinstatement order" and that he "[did not] have any evidence that there isn't one." *Id.* at 12–13.

Accordingly, the reinstatement order did not initiate proceedings as a "charging document," and the absence of the reinstatement order from the record before the IJ did not constitute a violation of Cadenas-Campuzano's due process rights.

9

## 2.    *The DHS Complied with 8 C.F.R. § 241.8*

Cadenas-Campuzano argues that he was deprived of due process when the Government failed to properly serve him with the reinstatement order and when DHS did not comply with the applicable procedural mandates of 8 C.F.R. § 241.8 for reinstatement proceedings. Cadenas-Campuzano generally claims that DHS "failed to comply" with § 241.8, but he does not provide specifics. Aplt. Br. at 14–15.

Cadenas-Campuzano's challenge is again without merit. First, the record shows that DHS served Cadenas-Campuzano with the reinstatement order and afforded him an opportunity to provide a statement. DHS AR at 7–10, 34–36. Cadenas-Campuzano refused to sign the reinstatement order and declined to provide a statement. *Id.* Second, Cadenas-Campuzano does not dispute that he satisfies the statutory predicates for reinstatement. He admitted that he was subject to a prior order of removal and unlawfully reentered the United States after he was removed. *See id.* at 20–21. Given these facts, he cannot show that DHS's reinstatement procedures caused him prejudice, and therefore his due process challenge fails. *See Duran-Hernandez*, 348 F.3d at 1162–63 (rejecting claim that reinstatement of prior removal order violated procedural due process rights of noncitizen who admitted the facts necessary to warrant reinstatement).

## B.    Reasonable Fear Determination

Cadenas-Campuzano argues that the IJ erred in affirming the asylum officer's determination that he did not establish a reasonable fear of persecution or torture if returned to Mexico.

10

When a noncitizen like Cadenas-Campuzano is subject to a reinstated removal order and the IJ has entered a negative reasonable fear determination against him, both the order of reinstatement and reasonable fear determination are reviewable. *See* 8 U.S.C. § 1252(a)(1); 8 C.F.R. § 208.31(g)(1).  The court considers constitutional and legal issues de novo and in general reviews findings of fact under a substantial evidence standard.  *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005).  Under the deferential standard of substantial evidence, "findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary."  *Id*. (internal quotation marks omitted).

The standard of review applicable to a negative reasonable fear determination, however, is an open question in the Tenth Circuit.  The Third and Ninth Circuits have concluded that negative reasonable fear determinations should be reviewed for substantial evidence.  *See Romero v. Att'y Gen. of the U.S.*, 972 F.3d 334, 337, 340 (3d Cir. 2020); *Andrade-Garcia v. Lynch*, 828 F.3d 829, 833–36 (9th Cir. 2016).  Other circuits have applied the usual standards applicable to review of removal proceedings without discussion.  *See Lara-Nieto v. Barr*, 945 F.3d 1054, 1060 (8th Cir. 2019) (declining to reach issue because petition failed under standard more favorable to petitioner); *Hernandez-Aquino v. Barr*, 770 F. App'x 88, 88 n.2 (4th Cir. 2019) (same); *Telles v. Lynch*, 639 F. App'x 658, 662 (1st Cir. 2016) (same).  The Government argues that the Tenth Circuit should apply an even more deferential standard than substantial evidence: "facially legitimate and bona fide reason." *See* Aple. Br. at 15–27.  We need not resolve this issue here because

11

(1) Cadenas-Campuzano does not raise this challenge on appeal and does not address whether the substantial evidence or "facially legitimate and bona fide reason" standard of review applies[2] and (2) Cadenas-Campuzano's petition fails even under the substantial evidence standard, which is more favorable to him.

In Cadenas-Campuzano's case, the IJ determined that Cadenas-Campuzano did not establish a reasonable possibility that any harm he might experience from cartels in Mexico would be motivated by a protected ground. To demonstrate eligibility for withholding of removal, "the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i); *see also* 8 U.S.C. § 1231(b)(3)(A).

Cadenas-Campuzano asserts that the findings of the IJ and asylum officer are not supported by evidence on the record and are a result of a failure to apply the proper legal standard for the reasonable fear determination. He states that "the Supreme Court has suggested that a one in ten chance may constitute a reasonable possibility of persecution." Aplt. Br. at 16 (citing *Diallo v. Gonzales*, 178 F. App'x 833, 836 (10th Cir. 2006)). He argues that the record shows that "there is at least more than 'one in ten' chance of persecution if [Cadenas-Campuzano] is returned to Mexico." *Id.* at 17. As support, he cites the following statements from his testimony: he is a family member of landowners and farmers in Mexico; the cartel

---

[2] Cadenas-Campuzano only mentions in passing that we should review the findings of fact under a substantial evidence standard, citing *Niang*. Aplt. Br. at 11.

had harmed several of his family members in the past because they had money; and the cartel harassed his father, who resides in the United States, when he traveled to Mexico last year. *See* EOIR AR at 34–38.

Even if we review the IJ's negative reasonable fear determination under the substantial evidence standard (which is more favorable to Cadenas-Campuzano), the record does not compel the conclusion in Cadenas-Campuzano's favor. *See* 8 U.S.C. § 1252(b)(4)(B); *see generally Alvarado-Herrera v. Garland*, 993 F.3d 1187, 1196 (9th Cir. 2021) (applying substantial evidence standard and affirming negative reasonable fear determination for risk of persecution based on lack of nexus to a protected ground); *Romero*, 972 F.3d at 342–43 (same). Although Cadenas-Campuzano testified that the cartel in Mexico had harmed various members of his family, he did not claim that the harm his cousin experienced (the murder of her husband in 2009 and the kidnapping of her daughter in 2010) was in any way connected to the harm his uncle and other family members who were farmers experienced. Instead, he testified that the cartels targeted his uncle and other farmers because they had money from their crops, and he expressed his fear of being targeted for money because he appeared Americanized. *See* DHS AR at 22–27. The motive of the alleged persecutors is "critical" for establishing eligibility for withholding of removal. *Rodas-Orellana v. Holder*, 780 F.3d 982, 996 (10th Cir. 2015) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992)). Nexus is not established simply because a particular social group of family members exists and the family members experience harm. *See Orellana-Recinos v. Garland*, 993 F.3d 851, 856–57 (10th Cir.

2021); *see also Lopez v. Barr*, 773 F. App'x 459, 462 (10th Cir. 2019) ("[Petitioner] had to show her family membership was not 'incidental, tangential, superficial, or subordinate to another reason for [this] harm.'") (quoting *Dallakoti v. Holder*, 619 F.3d 1264, 1268 (10th Cir. 2010)).

Moreover, the IJ provided the following reasons for affirming the negative reasonable fear determination: "No nexus to a protected ground; no involvement by public officials; no inability or unwillingness to control third parties by public officials re: persecution; and no instigation, consent, or acquiescence of public officials re: torture." EOIR AR at 1. The record therefore does not compel the conclusion that the cartel targeted Cadenas-Campuzano's family because of family membership or that the cartel would be motivated to target Cadenas-Campuzano because of his family group membership.

Accordingly, substantial evidence supports the IJ's concurrence with DHS's determination that Cadenas-Campuzano failed to establish a reasonable fear of persecution in Mexico.

### III

Cadenas-Campuzano's petition for review is DENIED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge