# United States Court of Appeals
## For the First Circuit

No. 18-1830

JOSE ANTONIO REYES-RAMOS,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF AN IMMIGRATION JUDGE

Before

Barron, Chief Judge,
Howard and Kayatta, Circuit Judges.

Stephen A. Lagana for petitioner.
Christina P. Greer, with whom Joseph H. Hunt, Assistant Attorney General, U.S. Department of Justice, Civil Division, Terri J. Scadron, Assistant Director, Office of Immigration Litigation, and Leslie McKay, Senior Litigation Counsel, Office of Immigration Litigation, were on brief, for respondent.

January 13, 2023

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Merrick B. Garland has been substituted as the respondent.

- 1 -

**HOWARD**, **Circuit Judge**.  In his petition for review of an immigration judge's (IJ) denial of his application for withholding of removal, Jose Antonio Reyes-Ramos argues that the IJ erred by concurring with an asylum officer's determination that Reyes did not have a reasonable fear of persecution or torture.  Finding Reyes's arguments unpersuasive, we deny his petition.

## I.

A native and citizen of El Salvador, Reyes entered the United States without inspection on three occasions.  He first entered in 2005 and the next year was ordered removed in absentia, after he failed to appear for a hearing.  After his eventual removal by the Department of Homeland Security (DHS) in June 2011, pursuant to the 2006 removal order, Reyes reentered the United States without inspection in September of the same year.  He was apprehended the following month and DHS reinstated the 2006 removal order against him.  After his October 2011 apprehension, Reyes initially expressed fear of persecution or torture if removed to El Salvador.  However, he withdrew his request for a reasonable fear determination after being detained for two months, disclaiming his fear of returning to El Salvador and requesting removal.  DHS removed Reyes in January 2012.

Reyes subsequently reentered the United States for a third time without inspection on an unknown date.  DHS apprehended him in April 2018 after he was arrested in Massachusetts for

committing a criminal offense. The agency reinstated his 2006 removal order for a second time, and Reyes again expressed fear of persecution or torture. During his subsequent reasonable fear interview with the asylum officer, Reyes stated that he feared returning to El Salvador because of the violence that he suffered at the hands of gangs that he refused to join. According to Reyes, MS-13 began recruiting him when he was 18 or 19 years old and serially terrorized him after he refused to join. They reportedly beat him to the point of unconsciousness the first time he refused, leaving permanent scars on his head. Reyes also said that, on another occasion, gang members shot him in the leg as he fled from them and threatened to kill him the next time they saw him. While Reyes was away from his family recovering from his wound, gang members allegedly told his mother that they would continually search for Reyes so that they could kill him. Reyes did not report these incidents to local police, and noted his general belief that the police could not protect him from gang-inflicted violence. He recounted that police did not respond when his cousin was kidnapped and killed and that they responded tardily when his uncle was shot. He attributed his uncle's death to this delay.

While the asylum officer found Reyes's testimony credible, the officer nevertheless concluded that Reyes had shown neither a connection between his claims and a protected ground, nor that government officials would acquiesce in torturing him.

As will be further discussed below, Reyes had the burden of establishing a "reasonable possibility" of either consequence to have his removal withheld under 8 C.F.R. § 208.31(c).

Reyes requested review of the asylum officer's rejection of his reasonable fear claim by an IJ.  See 8 C.F.R. § 208.31(g). Reyes argued to the IJ that he was a member of a social group of "persons [against] who[m] the MS Gang retaliates for failure to join."  In addition to considering Reyes's testimony, the IJ also reviewed death certificates and medical records that Reyes submitted to show the murders of family and friends killed by MS-13 gang members.

In upholding the asylum officer's decision, the IJ concluded in a written order that, while he believed that Reyes's "threats and beatings [were] unfortunate" and he was "extremely sympathetic to the plight of the respondent," there was insufficient evidence to find that Reyes had been attacked because of a protected ground, as DHS regulations require.  The IJ found that the harm Reyes suffered "appear[ed] to be motivated by gangs or organized crime committing heinous crimes to increase their ranks and power[,] instead of targeting the respondent on any protected ground."

The IJ also found that Reyes's purported social group was "insufficiently particular and lack[ed] social distinction." And the IJ agreed with the asylum officer that there was

- 4 -

"insufficient evidence in the record to establish a reasonable possibility that the respondent would be singled out for torture with the consent, instigation, acquiescence, or willful blindness of a public official or other person acting in an official capacity." He also noted that Reyes never contacted the police and that there was insufficient evidence to show why the police did not follow up on his cousin's murder. Reyes's petition to this court followed.

## II.

There is a threshold question of whether we have jurisdiction over Reyes's petition.[1] We have often repeated that our jurisdiction to review orders of removal pursuant to 8 U.S.C. § 1252(a)(1) and (5) applies only to final orders of removal. See, e.g., Xin Qiang Liu v. Lynch, 802 F.3d 69, 74 (1st Cir. 2015).

8 C.F.R. § 208.31 details DHS's process for adjudicating reasonable fear claims following reinstatement of removal. Under the regulation, a claimant whose removal order has been reinstated, but who "express[es] a fear of returning to the country of removal," may have her claim reviewed by an asylum officer. 8 C.F.R. § 208.31(a). If the asylum officer finds in the

---

[1] We raise this issue notwithstanding the government's concession of jurisdiction. "[A] federal court is under an unflagging duty to ensure that it has jurisdiction over the subject matter of the cases it proposes to adjudicate." Am. Policyholders Ins. v. Nyacol Prods., Inc., 989 F.2d 1256, 1258 (1st Cir. 1993).

claimant's favor, the officer will refer the matter to an IJ for full consideration of the request to withhold removal, and the claimant may appeal an adverse decision of the IJ to the Board of Immigration Appeals (BIA). Id. at § 208.31(e). But if both the asylum officer and the IJ find against the claimant, the petitioner cannot appeal to the BIA, and the IJ will have the final administrative word. Id. at § 208.31(g)(1). This case sits in the latter posture. Moreover, Reyes does not dispute that there is a final order of removal in place and that he is nonetheless challenging only the credible fear ruling by the IJ.

We have not held definitively whether we can exercise jurisdiction under § 1252 over the credible fear determination in this scenario. Cf. Garcia Sarmiento v. Garland, 45 F.4th 560, 563 & n.1 (1st Cir. 2022). The Supreme Court has stated twice in recent years that withholding-only proceedings do not result in final orders of removal. See Johnson v. Guzman Chavez, 141 S. Ct. 2271, 2288 (2021); Nasrallah v. Barr, 140 S. Ct. 1683, 1691 (2020). And at least one circuit has foreclosed review under similar circumstances. See Bhaktibhai-Patel v. Garland, 32 F.4th 180, 195 (2d Cir. 2022); but see Tomas-Ramos v. Garland, 24 F.4th 973, 980 n.3 (4th Cir. 2022) (finding that an IJ's negative reasonable fear determination constitutes a "final order"). We nevertheless leave this question for another day. As we have done in other immigration cases that raised issues of our authority to review

under § 1252, we bypass the jurisdictional question here because Reyes's petition "easily fail[s] on the merits." Telles v. Lynch, 639 F. App'x 658, 659 (1st Cir. 2016); see also Tacuri-Tacuri v. Garland, 998 F.3d 466, 472 (1st Cir. 2021) ("While federal courts typically cannot apply 'hypothetical jurisdiction' in terms of Article III jurisdiction, we can sidestep statutory jurisdiction when, as here, it makes sense to do so because the resolution on the merits of the case is straightforward." (quoting Alvarado v. Holder, 743 F.3d 271, 276 (1st Cir. 2014))).

## III.

The parties disagree over the standard of review that we should apply. Reyes argues for the substantial evidence standard, which at least the Ninth Circuit employs when reviewing an IJ's negative reasonable fear determination, see Andrade-Garcia v. Lynch, 828 F.3d 829, 831 (9th Cir. 2016), while the government asks us to employ the even more deferential "facially legitimate and bona fide reason" standard, which the government similarly urged in Telles, see Telles 639 F. App'x at 662; cf. Tomas-Ramos, 24 F.4th at 981 ("While the government has often taken th[e] position [that the facially legitimate and bona fide reason standard should apply] in cases challenging reasonable fear determinations, it has yet to find a circuit to agree, and our

- 7 -

court has expressed some skepticism.").[2]  But this dispute need not detain us, because, as in Telles, Reyes's claims fail even under the more petitioner-friendly substantial evidence standard that he urges.  See Telles, 639 F. App'x at 662 ("[W]e need not and do not reach the question of whether this standard should apply to an IJ's concurrence with an [asylum officer's] negative reasonable fear determination because [petitioner's] claim fails even under the substantial evidence standard he says should apply.").

To that end, when applying the substantial evidence standard, we will uphold findings that are "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Enamorado-Rodriguez v. Barr, 941 F.3d 589, 595 (1st Cir. 2019) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)).  "We will reverse if the record would compel a reasonable fact-finder to reach a contrary conclusion."  Ordonez-Quino v. Holder, 760 F.3d 80, 87 (1st Cir. 2014).

Finally, although Reyes urges us to apply substantial-evidence review, we have held that a "conclusion regarding the definition and scope of the statutory term 'particular social group' is a purely legal determination that we review de novo."

_____

[2] Under this standard, the government argues, we should not review the IJ's treatment or balancing of factors.  Rather, we should instead confine our review to the facial plausibility of the IJ's reasoning.

Aguilar-de Guillen v. Sessions, 902 F.3d 28, 33 (1st Cir. 2018). We therefore review de novo, to the extent that Reyes challenges the IJ's rejection of his proposed definition of the relevant social group. See 8 C.F.R. § 208.31(c).

**IV.**

Reyes argues that the IJ erred by dismissing his gang-related claim "wholesale," ostensibly without evaluating the merits of his proposed social group.[3]

**A.**

Reyes's argument that the IJ dismissed his persecution claims out of hand because they were gang-related is belied by the record. The IJ thoughtfully reviewed Reyes's claims: He accepted and reviewed the death certificates and medical documents that Reyes submitted, verbally confirmed key parts of Reyes's testimony, and allowed Reyes to offer new information, ultimately crediting his testimony. It was only after reviewing this record that the IJ found that Reyes's articulated social group -- "persons [against] who[m] the MS Gang retaliates for failure to join" -- did not qualify because this court has repeatedly found that mere

---

[3] Reyes also alludes in one line of his brief to an argument that the IJ erred by prematurely requiring him to articulate the social group to which he belonged. We need not address this argument, since we have long warned "that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 9 -

opposition to gang membership cannot form the basis of a particular social group. See, e.g., Guevara-de Vilorio v. Lynch, 674 F. App'x 1, 4 (1st Cir. 2017) (noting that we have "'decided a number of cases that have rejected the argument that people who oppose gang membership or recruitment are members of a particular social group'" (quoting Beltrand-Alas v. Holder, 689 F.3d 90, 93 (1st Cir. 2012))).

## B.

On de novo review, we also conclude that the IJ correctly rejected Reyes's proposed social group under this court's precedent. "For a proposed social group to be cognizable, an applicant must show that the group is '(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question.'" Chavez v. Garland, 51 F.4th 424, 432 (1st Cir. 2022) (quoting Paiz-Morales v. Lynch, 795 F.3d 238, 244 (1st Cir. 2015)). As the IJ recognized, Reyes's proposed group falls short of this definition because it "is insufficiently particular and lacks social distinction."

First, Reyes failed to show that his group was socially distinct. He focused instead on his visibility to his attackers, which does not suffice under our precedent. See Mendez-Barrera v. Holder, 602 F.3d 21, 27 (1st Cir. 2010) (stating that "[t]he relevant inquiry is whether the social group is visible in the

- 10 -

society, not whether the alien herself is visible to the alleged persecutors"); see also Perez-Trujillo v. Garland, 3 F.4th 10, 17-18 (1st Cir. 2021) (holding that a proposed social group of "young, male, Salvadoran students who are forcibly recruited into gangs, refuse gang orders, and leave the gang" lacked social visibility, as that group was not "generally recognized in the community as a cohesive group" (second quoting Larios v. Holder, 608 F.3d 105, 109 (1st Cir. 2010))).

Reyes's group also lacked particularity because he defined the group ambiguously, leaving open, for example, what conduct counted as retaliation and what level of refusal constituted sufficient resistance to provoke retaliation from gang members. See Mendez-Barrera, 602 F.3d at 27 (finding that petitioner's proposed social group of "young women recruited by gang members who resist such recruitment" lacked particularity because its "loose description" left open "questions about who may be considered 'young,' the type of conduct that may be considered 'recruit[ment],' and the degree to which a person must display 'resist[ance]'" (alterations in original)); accord Aguilon-Lopez v. Lynch, 664 F. App'x 14, 15, 18 (1st Cir. 2016) (finding that a proposed social group of "residents of Guatemala who have been threatened with gang violence and recruitment to a gang, and have refused" lacked particularity because "[t]hese group characteristics are highly amorphous, largely subjective, and

- 11 -

generally inhibit the 'accurate separation of members from nonmembers'" (quoting <u>Ahmed</u> v. <u>Holder</u>, 611 F.3d 90, 94 (1st Cir. 2010))). We therefore find no fault with the IJ's reasoning under our precedent.

## V.

For the foregoing reasons, Reyes's petition for review is **<u>denied</u>**.